STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1500


MELBA ELAINE JESSOP, ET AL.

VERSUS

CITY OF ALEXANDRIA, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 203,781
HONORABLE WILLIAM ROSS FOOTE, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Glenn B. Gremillion, Billy Howard Ezell, and *Arthur J. Planchard, Judges.

* Honorable Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as *Judge Pro Tempore*.


AFFIRMED IN PART; REVERSED IN PART; REMANDED.


Paul Holliday Fleming Baker
Law Office of Nan Landry
2014 W. Pinhook Rd., #403
Lafayette, LA 70508
(337) 234-7200
Counsel for: Defendants/Appellees
City of Alexandria
Alexandria/Pineville AreaConvention & Visitors Bureau

**Hon. Chris Smith, III**
**Leesville City Court Judge**
**P. O. Box 1486**
**Leesville, LA 71446**
**(337) 238-1531**
**Counsel for: Plaintiffs/Appellees**
**Melba Elaine Jessop**
**Richard Allan Jessop**

**Mark L. Ross**
**Attorney at Law**
**600 Jefferson, #512, Box 23**
**Lafayette, LA 70501**
**(337) 266-2345**
**Counsel for: Third-Party Defendants/Appellants**
**Scottsdale Ins. Co.**
**M & M Enterprises, Inc.**
**Arena Productions**

**EZELL, JUDGE.**

This is a tort action arising from injuries sustained by a patron while attending a sale show at the Alexandria Riverfront Center, Arena Productions, Inc. M & M Enterprises, Inc., and Scottsdale Insurance Company appeal a judgment granting a motion for summary judgment in favor of the Alexandria/Pineville Area Convention and Visitors Bureau and the City of Alexandria.

## FACTS

Melba and Richard Jessop initiated this lawsuit for damages claiming Melba tripped and fell, injuring herself while at a "sale show" at the Riverfront Center. The show was promoted by Michael Okashah of Arena Productions, Inc. and M & M Enterprises, Inc. The Jessops filed suit against Arena, M & M, Scottsdale Insurance Company, the Alexandria Convention and Visitors Bureau, and the City of Alexandria.

The Convention and Visitors Bureau and the City (Third-Party Plaintiffs) filed a third-party demand against Arena, M & M and Scottsdale (Third-Party Defendants) requesting a defense and indemnification. Third-Party Plaintiffs later amended their claim alleging that they detrimentally relied on representations by Arena and M & M that they were additional insureds under the Scottsdale policy.

Subsequently, Third-Party Defendants filed a motion for a partial summary judgment seeking to dismiss the third-party demand. Thereafter, Third-Party Plaintiffs also filed a motion for summary judgment seeking a defense and indemnification from Scottsdale.

A hearing was held on August 6, 2002. The trial court rendered judgment granting Third-Party Plaintiffs' motion for summary judgment and denying the motion for summary judgment of Third-Party Defendants. A joint motion for

1

certification of judgment was signed on June 18, 2003. Third-Party Defendants then appealed the judgment. They basically allege two assignments of error. Third-Party Defendants first claim that the trial court erred in finding that Third-Party Plaintiffs were entitled to additional insured status under the Scottsdale policy. Third-Party Defendants also claim the trial court erred in finding that the terms of the Scottsdale policy entitle Third-Party Plaintiffs to a defense and indemnification.

## STANDARD OF REVIEW

"Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Ross v. Conoco, Inc.*, 02-299, p.5 (La. 10/15/02), 828 So.2d 546, 550. A motion for summary judgment will be granted" if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). The facts at this point in the case are not in dispute. The decision in this case turns on the interpretation of an insurance policy and the actions of the parties in entering into the lease of the Riverfront Center for the show.

> Interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. Summary judgment declaring a lack of coverage under an insurance policy may be rendered only if there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.

*Miller v. Superior Shipyard and Fabrication, Inc.*, 01-2907, p. 4 (La.App. 1 Cir. 8/20/03), 859 So.2d 159, 162, *writ denied*, 03-2643 (La. 12/12/03), 860 So.2d 1159 (citations omitted).

2

## ADDITIONAL INSURED STATUS

Third-Party Defendants argue that the trial court erred in finding that there was a verbal agreement promising to name Third-Party Plaintiffs as additional insureds. Third-Party Defendants further claim that, even if there was a verbal agreement, the written lease between Okashah and Third-Party Plaintiffs provided that the lease "supersedes any verbal agreement that may have been made between the parties." There is an additional claim by Third-Party Defendants that a certificate of insurance issued by the insurance agent could not add to or change the coverage provided for by the Scottsdale policy.

> An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. The parties' intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. LSA-C.C. art.2047. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. The determination of whether a contract is clear or ambiguous is a question of law.

*Id.* at 162-63 (case citations omitted).

The Scottsdale policy at issue in this case contained a "BLANKET ADDITIONAL INSURED ENDORSEMENT". The pertinent language relating to the definition of an insured provides:

> **WHO IS AN INSURED (SECTION II)** is amended to include as an insured any person or organization (called additional insured) whom you are required to add as an additional insured on this policy under a written contract, agreement or permit which must be:
>
> > a.   currently in effect or becoming effective during the term of the policy; and
> >
> > b.   executed prior to the "bodily injury," "property damage," "personal injury," or "advertising injury."

A review of the lease signed by Okashah reveals that there was no direct requirement in the lease that he add Third-Party Plaintiffs as additional insureds to the Scottsdale policy. Paragraph nineteen provided only that "The Lessee shall provide to the Alexandria Riverfront Center manager, the Alexandria/Pineville Convention and Visitor's Bureau, proof of adequate comprehensive public liability insurance in the amount of $1 million to paid for solely by Lessee."

However, paragraph seventeen (emphasis supplied) relating to the lessee and a decorator or other agent provides as follows:

> (17) Lessee and the decorator or other agent hired by the Lessee must comply with applicable local, state, and national fire and safety codes. Decorators must be approved prior to entering the facility. **Approval may be obtained by having an insurance certificate on file for general liability, product liability, and workmen's compensation insurance, with the Alexandria Riverfront Center, Alexandria/Pineville Area Convention and Visitors Bureau, and the City of Alexandria named as additional insured.** Lessee shall not allow any open flames in the center unless enclosed by glass. Lessee must not bring any gasoline or other flammable substances into the center. Decorations used by the Lessee shall be of approved flame resistant materials.

While at first blush it appears that only the decorator need add Third-Party Plaintiffs as additional insureds, paragraph seventeen refers to the lessee, decorator, or an agent. Paragraph seventeen also lays out further obligations of the lessee. Additionally, paragraph seventeen does not state who is required to have the insurance certificate on file. One can surmise that all three, lessee, decorator, and agent, must have a certificate of insurance on file listing Third-Party Plaintiffs as additional insureds. While we agree that the lease language is somewhat ambiguous, there are additional facts which support this proposition.

Okashah's deposition testimony indicates that he purchased the Scottsdale policy through Given/Woods. He explained that he usually worked with David or Mildred at Given/Woods. Okashah stated that he usually gives the information to

4

Given/Woods on how the party is to be named as an additional insured and the company takes care of the matter.

Excerpts of the deposition of Cindy Hastings, the business director for the Bureau who handled contractual agreements, was introduced by both parties. She explained that Okashah signed the lease as a last-minute booking. He signed the lease on March 27, 2000, for the event to be held three days: March 31 to April 2, 2000. She explained that once a person signs the lease and she gets the money, she informs the person that she needs the balance of the money prior to moving in and that she needs a copy of their liability insurance that lists the entities as additional insured.

Hastings further testified that she has a standard form in her computer that lists the items she still needs before the event. A document in the record entitled "Documents/Information Needed to Complete Contract" indicates that it was faxed on March 30, 2000 to Mildred. The document shows that the general liability insurance in the amount of $1,000,000 had not been received. This document shows that the insurance certificate must list three entities as additional insureds and gives the name of the three entities. Hasting's name and phone and fax numbers are handwritten on the document.

On that same day a certificate of insurance was issued by Given/Woods & Associates, Inc., showing the dates of the event and listing the three entities as additional insureds. Mildred Wayne's fax number is handwritten on the bottom.

In *Miller*, 859 So.2d at 163, the first circuit found that policy language pertaining to an additional insured "if required by written contract" granted additional insured status to a party when its insured had a written contract with the party that required the insured to add the party as an additional insured under the policy even though the party was not specifically named as an additional insured in the policy.

5

The first circuit further held that "[t]he plain wording of the endorsement shows that it applies to any potential liability sought to be imposed upon the additional insured . . . because of something the named insured . . . is alleged to have done or failed to have done in connection with the named insured's . . . operations." *Id.* at 163-64. Therefore, it is obvious that when there is a written contract that requires that a party be named as an additional insured, the policy language automatically includes the party as an additional insured pursuant to any conditions under the additional insured provisions.

An Illinois court interpreted almost identical policy language in *United States Fire Ins. Co. v. Hartford Ins. Co.*, 726 N.E.2d 126 (Ill.App. 3 Div. 2000). In that case, there was also an oral agreement to provide additional insured status to a party. However, a certificate of insurance was not issued until after the accident at issue. The court concluded:

> When reading the policy phrase within the context of the entire provision, as we must, the only reasonable construction is that there must be a written document - contract, agreement, or permit - which evidences the insured's intention to provide insurance coverage to another person or organization before the Hartford policy will cover that person or organization as an additional insured.

*Id.* at 129.

The court further held:

> The only reasonable interpretation of the Hartford policy provision is that an "additional insured" will include only those persons or organizations which have received written confirmation - in the form of a contract, agreement, or permit - of the insured's promise to provide insurance coverage prior to the event for which coverage is being claimed. It would be unreasonable to hold any "contract" or "permit" must be evidence by a writing, but an "agreement" would not.

*Id.* at 129-30.

Subsequently, another Illinois court was once again faced with the similar policy language. *West Am. Ins. Co. v. J.R. Constr. Co.*, 777 N.E.2d 610 (Ill.App. 2

6

Div. 2002). It distinguished *United States Fire Ins. Co.*, noting that the insured in that case denied that insurance coverage was a part of an oral agreement. The court also observed that the certificate of insurance was not requested and received until two days *after* the accident. In *West. Am. Ins. Co.*, written documents, prepared before the accident, existed which evidenced the insured's intent to include the party as an additional insured. These documents consisted of a certificate of insurance and a letter.

In the present case, although the actual lease itself did not necessarily require that Okashah list Third-Party Plaintiffs as additional insureds, we agree with the trial court that there was clearly an oral agreement between Hastings and Okashah to list Third-Party Plaintiffs as parties. Hastings stated that she would have told Okashah that she needed proof of liability insurance which listed the three entities as additional insureds. Okashah also agreed in his deposition that it was his understanding that he was supposed to have insurance for the facility where the event was held.

This oral agreement was followed by written confirmation of the agreement. A written request was made by Hastings to Given/Woods for proof of insurance listing the three entities as additional insureds. Obviously, Hastings got the information from Okashah as to where the request should be submitted. In response, Given/Woods issued a certificate of insurance prior to the event, indicating that three entities were additional insureds for the date of the event.

In addition to the fact that the lease itself contained a requirement of a certificate of insurance listing Third-Party Plaintiffs as additional insureds, we agree with the result reached in *West. Am. Ins.* and find that there were sufficient written documents evidencing an agreement that Okashah list Third-Party Plaintiffs as additional insureds for the event. All of the written documents were executed prior to the event and make

7

it clear that the entities were required to be named as additional insureds under the Scottsdale policy and were actually named on the certificate of insurance.

## COVERAGE

Third-Party Defendants also claim that the trial court erred in failing to find that the insurance provided by Scottsdale was excess to any other liability insurance for an additional insured. It claims that Third-Party Plaintiffs' own insurance is primary to Scottsdale's.

The other insurance provision in the additional insured endorsement provides: "Any coverage provided hereunder will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary."

Third-Party Plaintiffs argue that the trial court was correct in concluding that provision conflicted with the "other insurance" provision found in the main policy. We disagree.

It is well-settled that the specific controls the general in the interpretation of statutes and contracts. *Corbello v. Iowa Prod.*, 02-826 (La. 2/25/03), 850 So.2d 686. The "other insurance" provision found in the additional insured endorsement is very clear that, for any coverage provided to an additional insured, the additional insurance provided by the Scottsdale police is excess unless a contract specifically states otherwise. This is a limitation for the additional insured only. It does not apply to any other insureds.

None of the written documents in this case state otherwise. Therefore, we find the trial court erred in finding that the coverage provided by the Scottsdale policy was primary.

8

## INDEMNIFICATION AND DEFENSE

While not addressing the issue in its reasons for judgment, the judgment did declare that Third-Party Defendants had to provide both a defense and indemnity to Third-Party Plaintiffs. Third-Party Defendants argue that the issue of negligence is contested, and, therefore, the issue of indemnification was prematurely decided.

The pertinent paragraphs of the Lease are as follows:

(9) Lessor shall not be liable or responsible for and Lessee shall save and hold harmless Lessor from and against any and all claims and damages of every kind, for injury to or death of any person or persons and for damages to or loss of property arising out of or attributed directly or indirectly to the operations of the Lessee hereunder. Lessee shall likewise indemnify Lessor for any and all injury or damage to property belonging to Lessor, arising out or in connection with or result from any and all acts or omissions of the Lessee hereunder, its agents, employees, or invitees. Lessee assumes responsibility for the condition of the leased premises under La. R.S. 9:3221.

(24) Lessor assumes no responsibility whatsoever for any property placed in or on said premises, and said Lessor is hereby expressly released and discharged from any and all liabilities for any loss, injury or damages to person or property that may be sustained by reason of the occupancy on said premises under this agreement. Lessee must receive or make arrangements with a transfer company for the receipt of shipments of exhibits, equipment or other items. Lessor shall not accept shipments directly unless arranged in advance with the Alexandria Riverfront Center Manager.

Quoting from *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La.1977), the supreme court in *Home Ins. Co. v. National Tea Co.*, 588 So.2d 361, 364 (La.1991) (citations omitted), reviewed the rules of interpretation of contracts governing indemnity provisions as set forth in a lease as follows:

> A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms.

> . . . .Continuing, *Polozola* holds that the general rules which govern the interpretation of other contracts apply in interpreting indemnity contracts.

9

Regarding an owner-lessor's responsibility when a lessee contractually assumes the lessor's responsibility for the condition of the leased premises pursuant to La.R.S. 9:3221, this court in *O'Neill v. Thibodeaux*, 97-1065, p. 23 (La.App. 3 Cir. 3/6/98), 709 So.2d 962, 974, *writs denied*, 98-741, 98-870 (La. 5/1/98), 718 So.2d 416, 420, recognized that:

> [I]n order for an owner-lessor to escape liability under a lease pursuant to La.R.S. 9:3221, he must prove that the lessee assumed responsibility for the condition of the premises under the contract of lease, that the injury must have occurred either to the lessee or anyone on the premises with the permission of the lessee, and that he did not know nor should have known of the defect.

A reading of the pertinent lease provisions reveals that there is no requirement that the lessee indemnify the lessor for the lessor's own fault. We find that Third-Party Defendants are not required to indemnify Third-Party Plaintiffs for their own negligence or knowledge of a defect in the premises which may have contributed to Mrs. Jessop's fall. The record indicates that there is a dispute as to the allocation of fault for Mrs. Jessop's fall. Therefore, the existence of genuine issues of material fact regarding fault preclude granting Third-Party Plaintiffs' motion for summary judgment on the issue of indemnification. *Burns v. McDermott, Inc.*, 95-195 (La.App. 1 Cir. 11/9/95), 665 So.2d 76.

Regarding Third-Party Defendants' duty to defend, we first note that the additional insured endorsement provides for the duty to defend as follows:

> When this insurance is excess, we will have no duty under Coverage A or B to defend the additional insured against any "suit" if any other insurer has a duty to defend the additional insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the additional insured's rights against all those other insurers.

Therefore, since we have already ruled that Scottsdale's policy is excess in this case, there is no duty to defend, based on the policy language, for any claims arising

10

under Coverage A or B.  We must now look at whether the lease itself provides for the duty to defend.

"The language in an indemnity agreement dictates the obligations of the parties." *Kinsinger v. Taco Tico, Inc.*, 03-622, p. 1 (La.App. 5 Cir. 11/12/03), 861 So.2d 669, 671 (*citing Meloy v. Conoco, Inc*., 504 So.2d 833 (La. 1987)).  We see nothing in the lease that states anything about a defense.  It only speaks in the terms of indemnification.  We find that the trial court erred in granting Third-Party Plaintiffs' motion for summary judgment finding that they were entitled to a defense from Third-Party Defendants.

For these reasons, we agree with the trial court's grant of summary judgment in favor of the Alexandria/Pineville Area Convention and Visitors Bureau and the City of Alexandria insofar as ruling that they are additional insureds under the Scottsdale policy.  However, we reverse the summary judgment insofar as it declares that the Scottsdale policy was primary and that Scottsdale owes a defense under the policy. We also find that any determination of indemnification is premature until liability is established.  Costs of these proceedings are split between the parties.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**