971 So.2d 411 (2007)
Gerald and Betty ALWELL
v.
MEADOWCREST HOSPITAL, INC.
No. 07-CA-376.
Court of Appeal of Louisiana, Fifth Circuit.
October 30, 2007.
Jerald L. Album, Lauren L. Tafaro, Attorneys at Law, Metairie, Louisiana, for Defendant/Appellant.
*413 Bruce A. Cranner, Karen C. Duncan, Attorneys at Law, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Third-party Defendant, Liberty Surplus Insurance Corporation ("Liberty"), appeals from a summary judgment in favor of Third-party Plaintiff, Meadowcrest Hospital ("Meadowcrest"), holding Liberty to a contractual duty to defend Meadowcrest in a slip and fall case. We affirm in part and amend in part.
In 2002, Plaintiff, Betty Alwell, was allegedly injured when she slipped and fell at Meadowcrest due to a sticky substance on the floor. The Alwells subsequently filed a negligence suit against Meadowcrest, its janitorial service, Hospital Housekeeping Systems, L.L.C. ("HHS"), and HHS's general liability insurer, Liberty. Meadowcrest filed third-party actions against HHS and Liberty demanding defense and indemnity.
In the janitorial contract between Meadowcrest and HHS ("Housekeeping Agreement"), HHS agreed to defend, indemnify and hold Meadowcrest harmless for HHS's negligence or willful misconduct, to name it as an insured to the extent of HHS's negligence, and to maintain adequate liability insurance against claims that "might or could arise as a result of the Housekeeping Contract or performing hospital service for the benefit of the host hospital. . . ." Paragraphs 8 a., 8 b.
HHS subsequently purchased a policy from Liberty to comply with the Housekeeping Agreement. The policy provides coverage for damages HHS has obligated itself to pay under a contractual assumption of liability, but only when that liability is assumed in an "insured contract." An insured contract is one that pertains to HHS's business, and in which HHS agreed to assume the tort liability of another party "to pay for `bodily injury' . . . to a third party or organization."[1] HHS has a self insured retention ("SER") of $150,000. Meadowcrest was not specifically named as an insured.
Based on the contracts, Meadowcrest tendered its defense to Liberty. Liberty refused to comply. Meadowcrest then filed a Motion for Summary Judgment claiming that the Housekeeping Agreement and the Liberty policy require Liberty to provide a defense to the lawsuit, and indemnification in the event of a judgment against Meadowcrest. Meadowcrest filed a petition for penalties as a result of Liberty's refusal to provide a defense. The trial judge granted the motion in regard to the duty to defend, and further held that Meadowcrest is insured against a judgment in excess of $150,000, up to the policy limits. The judgment was silent regarding Meadowcrest's claim for penalties.
On appeal, Liberty asserts that the trial judge erred in finding it has a duty to defend Meadowcrest, because the duty to defend and the question of whether Meadowcrest is an insured is only triggered by finding HHS at fault. Thus, the summary judgment on these issues is premature. Liberty also asserts that the trial judge erred in failing to restrict its duty to the extent of HHS's liability. It further claims that it does not owe a defense or coverage to its insured or Meadowcrest *414 for the self-insured retention amount, because it is an excess carrier.
The standard for review of a ruling on a summary judgment is de novo. Suire v. Lafayette City-Parish Consol. Government, 04-1459, p. 11 (La.4/12/05), 907 So.2d 37, 48. Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B); Id. A genuine issue exists where reasonable persons, after considering the evidence, could disagree. Suire, 04-1459 at p. 11, 907 So.2d at 48. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Id. A fact is "material" if it is one that would matter at trial on the merits. Suire, 04-1459 at p. 11, 907 So.2d at 48. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. Id.
The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Elliott v. Continental Cas. Co., 06-1505, p. 5 (La.2/22/07), 949 So.2d 1247, 1250. Accordingly, the insurer's obligation to defend suits against its insured is generally broader than its obligation to provide coverage for damage claims. Id. If, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Elliott, 06-1505 at p. 5, 949 So.2d at 1250. Thus, unlike an indemnity agreement, an insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Id.[2]
We find that the trial judge did not err in rejecting the prematurity argument regarding the duty to defend. The question then, is whether the policy provides the possibility that Meadowcrest is covered, and that it may be held liable. We conclude it does.
The Housekeeping Agreement requires HHS to name Meadowcrest as an insured on its policy, to the extent of the negligence of HHS.[3] The policy excludes contractual liability, except for liability for damages assumed in a contract that is an "insured contract."[4] SECTION VII, 10 f. *415 defines an "insured contract", inter alia, as:
The part of any other contract or agreement pertaining to your business . . ., under which you assume the tort liability of another party to pay for "bodily injury" . . . to a third person or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.
The first part of the definition is met. However, HHS did not name Meadowcrest on its policy with Liberty as an additional insured. Nevertheless, the insurer stands in the shoes of the insured to the extent applicable to this situation.
The parties disagree concerning the meaning of the paragraphs' remaining language, as well as the meaning of the other provisions in light of the intent of the parties. Liberty urges that it is clear that the policy was obtained to cover HHS's contractual duties to Meadowcrest only, and do not extend to Meadowcrest's negligence. The Housekeeping Agreement specifically states that HHS's duty to defend and indemnify is only to the extent of HHS's fault. Thus, the policy only applies insofar as HHS is found to be at fault. Again, Liberty argues that, because that has yet to be determined, the issues should be deferred until fault is determined. Furthermore, Liberty contends that the trial judge failed to limit his ruling to HHS's fault.
Meadowcrest, on the other hand, argues that the duty to defend exists even if it is found to be solely negligent since it is an insured under the "insured contract" provision which does not restrict coverage to HHS' liability.
After our review of the two contracts, we find that the Liberty policy does not unambiguously exclude coverage. Thus, the trial judge did not err in finding Liberty has a duty to defend Meadowcrest. However, because the Housekeeping Agreement limits HHS's duty to defend and indemnify Meadowcrest to "the extent of Contractor's negligence",[5] the insurer, who stands in HHS's shoes, is liable only to the extent of HHS's negligence. The judgment will be modified to reflect the restriction.
Liberty also argues that it does not owe a duty to defend or indemnify Meadowcrest at this point in the proceedings, because the policy provides only excess coverage, which is triggered after other valid and collectable insurance has been satisfied. However, a self-insured retention is not considered an insurance policy. Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991). Self-insurance is "[a] plan under which a business sets aside money to cover any loss." Black's Law Dictionary 807 (7th ed.1999). It is in the nature of a deductible, in which HHS retained its risk up to $150,000. Although HHS would be responsible for up to $150,000 in damages, Liberty still has the duty to defend since the SIR is not insurance within the meaning of the policy.
Meadowcrest asserts that HHS or Liberty should be responsible for the SIR, regardless of who ultimately is found at fault.[6] We disagree. The language of the Housekeeping Agreement and the insurance *416 policy together show that the purpose of the policy is to provide insurance only to the extent of HHS's negligence.
Liberty also asserts that the trial judge erred in finding that Liberty is liable for damages over $150,000 up to the policy limits without also limiting the liability to the percentage of HHS's fault. We agree. Based on the reasons for judgment, the trial judge apparently neglected to include the restriction. Thus, we will amend the judgment to reflect the limitation.
Meadowcrest raised an issue in brief, asserting that the trial judge erred in failing to award penalties for Liberty's arbitrary and capricious refusal to provide a defense. However, Meadowcrest has failed to properly confect an appeal of the issue. In order for the appellate court to modify a judgment, the party asking for the modification must file either a motion for appeal, pursuant to La. C.C.P. art. 2121, or a written Answer to the Appeal, in accordance with La. C.C.P. art. 2133. Thus, the Court is precluded from addressing the argument.
Accordingly, we hereby affirm that part of the judgment holding that Liberty Surplus Insurance Corporation owes a defense to Meadowcrest Hospital, but amend it to restrict Liberty's duties to Meadowcrest Hospital to the extent of HHS's fault. We further amend the judgment to state that Meadowcrest is entitled to coverage for any amount of a judgment in excess of $150,000 up to the policy limits, but only to the extent of HHS's fault. The judgment is otherwise affirmed.
AFFIRMED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.
NOTES
[1] See: SECTION I-COVERAGES, COVERAGE A., 2. Exclusions, and the definitions in SECTION VII, 10 f.
[2] An indemnity agreement is a "specialized form of contract which is distinguishable from a liability insurance policy." Meloy v. Conoco, Inc., 504 So.2d 833, 839 (La.1987); Suire, 04-1459 at p. 17, 907 So.2d at 51. An indemnitor is not liable under an indemnity agreement until the indemnitee "actually makes payment or sustains loss." Meloy, 504 So.2d at 839; Suire, 04-1459 at p. 17, 907 So.2d at 51. Thus, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid. Meloy, 504 So.2d at 839; Suire, 04-1459 at p. 17, 907 So.2d at 51
[3] Housekeeping AgreementParagraph 8 a. states in part:

Contractor shall maintain adequate . . . general public liability . . . insurance against any claim or claims that might or could arise as a result of Contractor performing Hotel Service for the benefit of a Host Hospital under this Agreement. . . . The insurance policies shall name the Host Hospital as an additional insured (to the extent of Contractor's negligence). . . . Contractor's insurance shall be primary and non contributory.
[4] Liberty policySECTION ICOVERAGES, COVERAGE A., 2 Exclusions:

b. Contractual Liability.
`Bodily injury' or `property damage' for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liabilities for damages: (1) Assumed in a contract or agreement that is an "insured contract," provided the `bodily damage' . . . occurs subsequent to the execution of the contract. . . ." [Emphasis added.]
[5] See: Housekeeping Agreement, 8. a.
[6] The policy states that Liberty will pay those sums in excess of the `Self-Insured Retention' that the insured becomes legally obligated to pay.