MARC E. JOHNSON, Judge.
 

 [ 2This is a medical malpractice case in which plaintiff, Karina Suarez, appeals the trial court’s granting of summary judgment in favor of defendant, Dr. Wagih Mando. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On March 13, 2001, appellant underwent a laparoscopic cholecystectomy, or removal of her gallbladder, by Dr. Mando at East Jefferson General Hospital. Due to complications during the surgery, the laparo-scopic procedure was ultimately converted to an open cholecystectomy. During the laparoscopic procedure, appellant suffered a common duct injury and ligation of her right hepatic artery which required corrective surgery.
 

 Appellant filed a medical malpractice complaint with the Patient’s Compensation Fund, which rendered a unanimous opinion against appellant on February 19, 2004 opining that Dr. Mando’s treatment did not fall below the applicable standard of care. The medical review panel further opined that Dr. Mando adequately informed appellant of the risks of the procedure.
 

 [3On May 19, 2004, appellant filed a Petition for Damages in the district court against Dr. Mando seeking damages for injuries she received as the result of the surgery. Appellant alleged Dr. Mando violated the standard of care in performing the laparoscopic cholecystectomy, which resulted in damage to her internal organs. She further alleged that Dr. Mando failed to adequately disclose the risks of a lapa-roscopic cholecystectomy, which resulted in lack of informed consent.
 

 Dr. Mando subsequently filed a motion for summary judgment on the basis appellant did not have expert medical testimony to support her allegations of medical malpractice against him. Dr. Mando argued that the absence of expert medical testimony indicating he breached the required standard of care precluded imposition of liability against him. He attached a copy of the medical review panel’s opinion that he did not breach the applicable standard of care in treating appellant to his motion for summary judgment.
 

 Appellant filed an opposition to the motion for summary judgment and attached two different informed consent forms, testimony from the medical review panel, and the deposition of Dr. Daniel Frey, who performed her corrective surgery. Appellant asserted expert testimony was not needed to establish liability for Dr. Man-do’s acts of negligence. Nonetheless, appellant argued that the testimony of Drs. Frey and Kelvin Contreary showed a genuine issue of fact existed as to whether Dr. Mando breached the applicable standard of care. Appellant later supplemented her opposition with the deposition of Dr. Man-do and two affidavits, her own and that of her mother. The two affidavits stated that when appellant signed the surgery consent form, there.was no handwritten language under the material risks section of the form.
 

 At the hearing on the motion for summary judgment, appellant argued that she had two experts to support her case: Dr. Contreary, who was on the medical preview panel, and Dr. Frey, who per
 
 *133
 
 formed the corrective surgery. She admitted she had not retained these experts, but stated she intended to call them at trial. Appellant argued Dr. Contreary’s testimony during the medical review panel proceeding and Dr. Frey’s deposition were favorable to her. She further maintained that expert testimony was not required in her case. After appellant was unable to point to specific testimony from either Dr. Contreary or Dr. Frey that stated Dr. Mando breached the applicable standard of care, the trial court granted defendant’s motion for summary judgment.
 

 LAW AND ANALYSIS
 

 A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The initial burden of proof is with the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(C)(2);
 
 Schultz v. Guoth,
 
 10-348, *3-4 (La.1/19/11), 57 So.3d 1002.
 

 A material fact is one that potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit.
 
 Hines v. Garrett,
 
 04-806, p. 1 (La.6/25/04), 876 So.2d 764, 765
 
 (per
 
 curiam). A genuine issue is a “triable issue.”
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512, p. 27 | s (La.7/5/94), 639 So.2d 730, 751. If reasonable persons could disagree after considering the evidence, a genuine issue exists. However, if reasonable persons could reach only one conclusion on the state of the evidence, there is no need for a trial on that issue and summary judgment is appropriate.
 
 Id.; Alwell v. Meadowcrest Hosp., Inc.,
 
 07-376, p. 4 (La.App. 5 Cir. 10/30/07), 971 So.2d 411, 414. “In determining whether an issue is ‘genuine,’ courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.”
 
 Smith,
 
 93-2512 at 27; 639 So.2d at 751.
 

 Appellate courts review the granting or denial of a motion for summary judgment
 
 de novo
 
 under the same criteria governing the district court’s consideration of whether summary judgment is appropriate. Specifically, appellate courts must ask the same questions as the district court: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Matthews v. Banner,
 
 08-339, p. 3 (La.App. 5 Cir. 10/28/08), 996 So.2d 1161, 1163.
 

 After a
 
 de novo
 
 review, we find the motion for summary judgment was properly granted in favor of Dr. Mando. Pursuant to La. C.C.P. art. 966(C)(2), Dr. Mando needed only to show that there was an absence of factual support for one or more elements essential to appellant’s claim. Thereafter, it was incumbent on appellant to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden at trial. Appellant’s petition asserted a medical malpractice claim based on negligence, or breach of the standard of care, and a medical malpractice claim based on lack of informed consent.
 

 
 *134
 

 Negligence
 

 A plaintiff in a medical malpractice action is required to establish (1) the standard of care applicable to the doctor; (2) a violation by the doctor of that | ^standard of care; and (8) a causal connection between the doctor’s alleged negligence and the plaintiffs injuries. La. R.S. 9:2794(A);
 
 Pfiffner v. Correa,
 
 94-0924 (La.10/17/94), 643 So.2d 1228, 1283. Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a layperson can infer negligence without the guidance of expert testimony such as fracturing a leg during examination, amputating the wrong limb, dropping a knife or scalpel on a patient, or leaving a sponge in a patient’s body.
 
 Samaha v. Ran,
 
 07-1726, pp. 5-6 (La.2/26/08), 977 So.2d 880, 884;
 
 Pfiffner,
 
 94-0924 at 9, 643 So.2d at 1233.
 

 Dr. Mando’s motion for summary judgment was predicated on his contention that appellant had no expert testimony to support her allegation that he breached the standard of care. Contrary to appellant’s claim that an expert was not required in this case because of Dr. Mando’s obvious negligence, we find an expert was required in this case. This case was not simple. Appellant asserted Dr. Mando fell below the required standard of care in performing the laparoscopic cholecystectomy because, among other things, he did not properly identify the anatomical structures involved before cutting, failed to perform a eholangiogram
 
 [1]
 
 , and failed to timely convert to an open procedure. These are not issues from which a layperson can infer negligence without the assistance of expert testimony.
 
 See Schultz v. Guoth, supra
 
 at *6, 57 So.3d 1005.
 

 Despite arguing an expert was not required, appellant identified Drs. Contreary and Frey as experts who created a genuine issue of fact of whether the standard of care was breached.
 

 Dr. Contreary was one of three doctors who unanimously concluded that Dr. Man-do did not breach the required standard of care. During the medical review |7panel proceeding, Dr. Contreary stated that he did not see anything in the record to indicate that Dr. Mando’s conversion from a laparoscopic to an open procedure was not done at the appropriate time. He explained that every doctor has a different comfort zone of when they are uncertain of things and will convert to an open procedure. Dr. Contreary further stated that although Dr. Mando ultimately did not correctly identify and clip the right structures, Dr. Mando’s clinical judgment showed he attempted to identify the right structures and thought he was clipping the right structures. He explained that the amount of inflammation and scarring in appellant could have assisted in the mis-identification of the structures. Dr. Con-treary also stated he does not normally do cholangiograms on his gallbladder patients. He explained that his use of cho-langiograms is extremely rare because he is not a believer in the procedure. He further stated whether a eholangiogram would have made a difference in appellant’s case is impossible to answer. Nothing in Dr. Contreary’s testimony helps appellant meet her burden of proving that Dr. Mando breached the standard of care.
 

 Dr. Frey’s deposition is no more beneficial to appellant. In Dr. Frey’s deposition, he explains that the use of a cholangio-
 
 *135
 
 gram when unclear anatomy is involved is controversial. Dr. Frey was further unable to testify regarding the standard of care involved in the timing of converting from a laparoscopic to an open procedure. He explained that a surgeon converts when he feels the anatomy is of such a degree that he cannot figure it out laparo-scopically or when he has operated for a significant period of time but is not making enough headway. He said the timing can range from surgeon to surgeon depending on the doctor’s skill as a laparoscopic surgeon. Dr. Frey further confirmed the presence of anatomic anomalies in appellant that he observed during the corrective surgery. At no point |Rduring his testimony did Dr. Frey indicate Dr. Mando breached the applicable standard of care in performing the laparoscopic cholecystecto-my.
 

 It was incumbent upon appellant to present expert testimony showing Dr. Mando breached the standard of care to overcome a summary judgment. She failed to do so. Therefore, we find summary judgment in favor of Dr. Mando on the issue of medical malpractice based on negligence was proper.
 

 Informed Consent
 

 We next examine the propriety of summary judgment on appellant’s claim of medical malpractice based on informed consent.
 

 Under the Louisiana informed consent law, La. R.S. 40:1299.40, a physician is required to provide his patent with sufficient information to allow the patient to make an informed and intelligent decision on whether to submit to the proposed course of treatment. This information should include, if possible, “the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved in the proposed treatment or procedure, the prospects of success, the risks of failing to undergo any treatment or procedure at all, and the risks of any alternate methods of treatment.”
 
 Hondroulis v. Schuhmacher,
 
 558 So.2d 398, 410 (La.1988) (on rehearing).
 

 As in cases alleging breach of the standard of care, the plaintiff in an informed consent case bears the burden of proving: (1) the existence of a material risk which the physician must disclose; (2) the failure of the physician to inform the patient of a material risk; (3) the realization of the material risk; and (4) a causal connection between the failure to inform the patient of the risk and the realization of the risk.
 
 Labit v. Cobb,
 
 10-463, p. 6 (La.App. 3 Cir. 11/3/10), 50 So.3d 267, 271.
 

 |cA risk is material “when a reasonable person in what the doctor knows or should know to be the patient’s position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed therapy.”
 
 Hondroulis,
 
 553 So.2d at 412. Determining the materiality of a risk is a two-step process. First, the existence and nature of the risk and the likelihood of its occurrence must be defined. This requires some expert testimony because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence. Second, the trier of fact must decide whether the probability of that type of harm is a risk which a reasonable patient would consider in deciding on treatment. This second step in determining materiality does not require expert testimony.
 
 Brandt v. Engle,
 
 00-3416, p. 7 (La.6/29/01), 791 So.2d 614, 619.
 

 Although appellant’s petition alleges she was not informed of material risks associated with the laparoscopic cholecystecto-my, she did not specifically identify the material risks of which she was not advised. Two informed consent forms were introduced into evidence. One of the forms states the material risks as follows:
 

 
 *136
 
 Pancreatitis (inflammation of the gland that produces insulin); Injury to the tube (common bile duct) between the liver and the bowel; Retained stones in the tube (common bile duct) between the liver and the bowel; Narrowing or obstruction of the tube (common bile duct) between the liver and the bowel; Injury to the bowel and/or intestinal obstruction.
 

 A second form contains handwritten notes under the material risks section. The copy in the record is somewhat illegible but we are able to discern some of the handwriting to state additional material risks included injury to the liver and spleen, bleeding, hematoma, abdominal injury, and the fact the surgery may not be 110done laparoscopically. Appellant submitted an affidavit from herself and her mother that the handwriting was not present when she signed the consent form.
 

 We do not reach the issue of whether appellant was advised of the handwritten portion of the informed consent form because the record is completely devoid of any expert evidence regarding the risks and likelihood of their occurrence during this type of procedure. Without any expert testimony on this issue, appellant will not be able to satisfy her evidentiary burden at trial. Therefore, we find summary judgment in favor of Dr. Mando was appropriate on appellant’s claim of medical malpractice based on informed consent.
 

 DECREE
 

 For the reasons discussed above, the judgment of the trial court granting summary judgment in favor of Dr. Wagih Mando is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . A eholangiogram is an intraoperative procedure that allows the surgeon to look at the anatomy of the patient.