# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 15, 2012

No. 11-30477

Lyle W. Cayce
Clerk

EARL DEVILLE, ET AL,

Plaintiffs

v.

CONMACO/RECTOR L.P.,

Defendant/
Third-Party Plaintiff–Appellee

v.

FIREMANS' FUND INSURANCE COMPANY

Third-Party Defendant–Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
(09-CV-7391)

Before KING, BARKSDALE, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

This case began as a personal injury suit brought by Earl Deville for personal injuries he sustained when a pneumatic pile-driving hammer attached to a Conmaco/Rector L.P. ("Conmaco") crane, situated on a Great Southern

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30477

Dredging, Inc. ("Great Southern") barge, fell on Deville's right arm. Conmaco then brought a third-party action against Great Southern's insurer, Firemans' Fund Insurance Company ("FFIC"). This appeal concerns that third-party action, specifically which insurance policy or policies cover this accident and in what order and proportion. We AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Injury Giving Rise to the Dispute

In 2009, the State of Louisiana hired Great Southern to repair docks, bulkheads, and other structures at the Turtle Cove Research Facility, near Manchac, Louisiana. To carry out the work, Great Southern chartered, among other vessels, eleven barges. Great Southern also leased a crawler crane and pile-driving equipment from Conmaco. Deville was working for Great Southern when he was injured by the crane's hammer falling on his right arm.

### B.    Contractual Relationships between the Various Parties

When Great Southern leased the crane from Conmaco, it signed Equipment Lease No. 2684 (the "Lease"). The Lease, which was to be governed by Louisiana law, provides that Great Southern (as lessee) would be "liable for any loss or casualty which is not insured, or which is within exclusions to insurance coverage." The Lease further provides, with respect to insurance, that

> Lessee is required to provide certificate or other evidence of insurance covering Equipment (as provided herein); Lessee's Insurance coverage shall include endorsement for hired equipment and show limit; Lessee's Insurance coverage shall not have an offshore exclusion; Lessee's Insurance coverage shall include boom and overload protection; Lessee's Insurance coverage shall include flood insurance; and Lessee is liable for any loss or casualty which is not insured, or which is within exclusions to insurance coverage.

Additionally, appended to the lease were "General Lease Terms and Conditions." Paragraph 3(c) of these General Terms states, in relevant part:

No. 11-30477

> LESSEE SHALL AT ITS SOLE COST AND EXPENSE PROVIDE AND MAINTAIN A POLICY OF COMMERCIAL GENERAL LIABILITY INSURANCE COVERING ALL RISKS OF PHYSICAL LOSS OR DAMAGE TO PROPERTY OR INJURY TO PERSONS WITH RESPECT TO THE LESSEE'S POSSESSION AND USE OF THE EQUIPMENT, in such amounts as may from time to time be satisfactory to Lessor, including, but not limited to, coverage for contractual liability with regard to all of the obligations and indemnities of Lessee hereunder. . . . Lessee shall provide Lessor with Certificates of Insurance evidencing the coverages required above, and naming the Lessor and The CIT Group . . . as an additional named insured party under such policies . . . .

In order to comply with its obligation to obtain insurance under the Lease, Great Southern obtained a policy from FFIC (the "FFIC Policy"). Despite paragraph 3(c) of the Lease's requirement that the policy name Conmaco, the FFIC Policy did not specifically identify Conmaco as an "additional insured." Instead, the FFIC Policy contains a blanket additional insured endorsement: "the Policy . . . is amended to include any person or organization that you are obligated by an 'insured contract' to include as Additional Insureds, but only with respect to liability arising out of 'your work.'" This blanket endorsement requires the existence of an "insured contract," which the FFIC Policy defines as

> [t]hat part of any other contract or agreement pertaining to your business (including an indemnification of municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means any liability that would be imposed by law in the absence of any contract or agreement.

With respect to the ranking of the FFIC Policy vis-à-vis other policies, the FFIC Policy stated that

> a. Any coverage provided hereunder will be excess over any other insurance under which the insured has been afforded insured

3

No. 11-30477

status, whether primary, excess (other than insurance effected by the Named Insured hereunder and specifically written as excess of this coverage), contingent, or on any other basis, whether prior or subsequent hereto, and by whomever effected directly or indirectly covering loss or damage insured hereunder, and this company shall be liable only for the excess of such loss or damage beyond the amount due from such other insurance up to, but not exceeding, the limits of this policy as set forth in the declarations.

. . .

c. Notwithstanding paragraphs a. and b. above, this insurance shall be primary to any other insurance, but only:
    (1) With respect to "your work", and
    (2) When required by and only to the extent of such obligation under an "insured contract."

The FFIC Policy defines "your work" as "Work or operations performed by you or on your behalf and [m]aterials, parts or equipment furnished in connection with such work or operations.   Your work includes: Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and [t]he providing of or failure to provide warnings or instructions."  In addition to the FFIC Policy, Great Southern has an excess insurance policy (the "XL Policy") issued by XL Speciality Insurance Company ("XL") with a limit of four million dollars.

Conmaco has a general liability policy through Lexington Insurance Company ("Lexington") with a one-million-dollar limit of liability (the "Lexington Policy").  As to the Lexington Policy's ranking with respect to other policies, it states, in relevant part, that

[i]f other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Policy, our obligations are limited as follows:
a.  Primary Insurance
    This insurance is primary except when b. Excess Insurance, below, applies. If this insurance is primary, our obligations

4

No. 11-30477

are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. Method of Sharing, below.

b.  Excess Insurance
    This insurance is excess over: . . .

>    (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the "products-completed operations hazard" for which you have been added as an additional insured by attachment of an endorsement.

    When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

>    (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

>    (2) The total of all deductibles and self-insured amounts under all that other insurance.

    We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the limits of insurance shown in the Declarations of this Policy.

c.  Method of Sharing
    If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes an equal amount until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.  If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

No. 11-30477

## C.    Procedural Background

Deville brought suit against Conmaco, Great Southern, and their various insurers in the Eastern District of Louisiana in late 2009. Conmaco then filed a third-party complaint against FFIC, claiming that Conmaco was an additional insured under Great Southern's policy with FFIC. In September 2010, FFIC moved for summary judgment on Conmaco's third-party action. The district court denied that motion, reasoning that the Lease was an "insured contract" under the FFIC Policy. In October 2010, Great Southern, XL, and another insurer (Seabright Insurance Company) settled with Deville, and they were dismissed with prejudice pursuant to that settlement.

A trial on all remaining claims between the parties was scheduled, but prior to that, Deville settled with Conmaco and Lexington for $1,500,000. After hearing  argument on the ranking of the respective insurance policies, the district court concluded that (1) the FFIC Policy covered Conmaco, (2) the FFIC Policy was primary up to its one-million-dollar limit, and (3) Lexington and XL would share the remaining $500,000 owed to Deville in the settlement on a 4:1 basis with XL paying $400,000 and Lexington paying $100,000. FFIC timely appealed, invoking our jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

As all of the questions are ones of contract interpretation, we review them de novo. *In re Homeowners Mortg. & Equity, Inc.*, 354 F.3d 372, 375 (5th Cir. 2003).

The interpretation of these contracts is governed by Louisiana law. In determining questions of Louisiana law, this court follows the "civilian methodology" of Louisiana. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). Although we look to decisions of the Louisiana Supreme Court, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007), "[j]urisprudence, even when so cohesive and entrenched as

6

to rise to the level of *jurisprudence constante*, is merely a secondary law source," behind the "State's Constitution, codes, and statutes." *Am. Int'l Speciality Lines Ins.*, 352 F.3d at 260–61 (internal quotation marks omitted). As for decisions of Louisiana's intermediate appellate courts, though we will not "disregard" them absent "other persuasive data" that the Louisiana Supreme Court would decide otherwise, we are not "bound" by such decisions. *Id*. at 261.

Insurance policies are contracts and therefore should be "'construed by using the general rules of interpretation [of contracts] set forth in the Louisiana Civil Code.'" *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 748 (5th Cir. 2011) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). Interpreting a contract requires "the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id*. at art. 2046. "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So. 2d at 580 (citing La. Civ. Code art. 2047). Additionally, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049. However, "[a]n insurance contract . . . should not be interpreted in an unreasonable or strained manner . . . to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms." *Cadwallader*, 848 So. 2d at 580. If ambiguity is found to exist, such ambiguous provisions are "construed against the insurer and in favor of coverage." *Id*. (citing La. Civ. Code art. 2056). As for burdens, "the insured bears the burden of proving the existence of the policy and coverage," but the insurer "bears the burden of showing policy limits or exclusions." *Tunstall v. Stierwald*, 809 So. 2d 916, 921 (La. 2002).

No. 11-30477

## III.  DISCUSSION

**A.    Conmaco as an "Additional Insured" under the FFIC Policy**

Conmaco claims that it is covered under the FFIC Policy as an "additional insured" under that policy.  As this is an issue of "proving the existence of . . . coverage," Conmaco bears the burden of showing that it is covered by the blanket "additional insured" provision of the FFIC Policy.  To do so, it must demonstrate that the Lease constituted an "insured contract" pursuant to the FFIC Policy. To qualify as an "insured contract,"  Conmaco must show that Great Southern assumed Conmaco's "tort liability" through the execution of the Lease.  The key inquiry then is the assumption of Conmaco's tort liability by Great Southern. FFIC contends that the Lease only imposed a mere obligation to procure insurance and not the assumption of Conmaco's tort liability.

While it is true that under Louisiana law there is a presumption against finding the assumption of tort liability unless such an intention is expressed in unequivocal terms, *see Polozola v. Garlock, Inc.*, 343 So. 2d 1000, 1003 (La. 1977); *see also Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981) ("A contract to indemnify another for his own negligence imposes an extraordinary obligation.  Thus an indemnitor is entitled to express notice . . . ."), Louisiana courts have not held that any certain prescribed language is required to shift liability from one party to another.  Rather, the courts look to the contract as a whole.  *See Soverign Ins. Co. v. Tex. Pipe Line Co.*, 488 So. 2d 982, 983 (La. 1986).  Viewing the whole of the contract, we find that paragraph 3(c) and the additional General Terms, especially when read together, evince the requisite express intent of the parties to have Great Southern assume Conmaco's tort liability.  The language of paragraph 3(c) is very broad: "Lessee shall . . . cover[] all risks of physical loss or damage to property or injury to persons . . . ." This language suggests that Great Southern must obtain an insurance policy that covers all torts arising out of the use of the crane.  Moreover, when

8

paragraph 3(c) is read alongside the General Terms provision stating that "Lessee is liable for any loss or casualty which is not insured, or which is within exclusions to insurance coverage," it becomes clear that Great Southern was bound to cover any liability of Conmaco, even that which is outside of the scope of the broad insurance-procurement provision.

Our reading of the FFIC Policy is bolstered by the decision, on very similar facts, of the Louisiana Fifth Circuit Court of Appeal in *Alwell v. Meadowcrest Hospital, Inc.*, 971 So. 2d 411 (La. Ct. App. 2007). In that case, the plaintiff slipped and fell in a hospital and sued the hospital (Meadowcrest) and the hospital's janitorial service (HHS). Meadowcrest, like Conmaco, filed a third-party suit against HHS's insurer (Liberty), claiming that it was an "additional insured." HHS had agreed to "maintain adequate . . . general public liability . . . insurance against any claim or claims that might or could arise as a result of [HHS] performing Hotel Service for the benefit of [Meadowcrest] under [that] Agreement." *Id.* at 414 n.3. Moreover, the agreement provided that "[t]he insurance policies shall name [Meadowcrest] as an additional insured (to the extent of [HHS]'s negligence)." *Id.* "HHS subsequently purchased a policy from Liberty to comply with the . . . Agreement. The policy provide[d] coverage for damages HHS ha[d] obligated itself to pay under a contractual assumption of liability, but only when that liability is assumed in an 'insured contract.'" *Id.* at 413. The policy defined an insured contract the exact same way as the FFIC Policy does here, and the *Alwell* court found no error in the trial court's determination that "Liberty ha[d] a duty to defend Meadowcrest." *Id.* at 415.

We find that the Lease was an "insured contract" because in the Lease Great Southern assumed Conmaco's tort liability. We therefore hold that Conmaco is an "additional insured" under the FFIC Policy.

## B.     Ranking of the Policies

FFIC next contends that its policy is excess to Conmaco's general commercial insurance, the Lexington Policy.  Where, as here, "there is no statutory or public policy governing the ranking of insurance, the law requires that the court give effect to the actual language of each policy, to the extent possible."  *Spiro v. Liberty Mut. Fire Ins. Co.*, 761 So. 2d 53, 55 (La. Ct. App. 2000).  The default ranking of the FFIC Policy is excess, but the FFIC Policy provides that it becomes primary if two conditions are met: (1) "'your [Great Southern's] work'" is at issue and (2) "[w]hen required by and only to the extent of such obligation under an 'insured contract.'"  The "your work" condition is met here because "your work" encompasses "[m]aterials, parts or equipment furnished in connection with [Great Southern's] work or operations," and the Conmaco crane was furnished in connection with Great Southern's work.  Ranking of the FFIC Policy and the Lexington Policy therefore turns on the second condition.

FFIC argues, based on *Jessop v. City of Alexandria*, 871 So. 2d 1140 (La. Ct. App. 2004), that this second condition requires the "insured contract" at issue to specifically state that the policy is primary.  In *Jessop*, the court dealt with a ranking clause that provided: "Any coverage provided hereunder will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary."  *Id.* at 1146 (internal quotation marks omitted).  Unlike in *Jessop*, however, the FFIC Policy imposes no specificity requirement, only that the policy be primary as a result of obligations undertaken in an "insured contract."  Thus, both conditions for rendering the FFIC Policy primary are met: (1) the need for coverage arose out of Great Southern's "work" and (2) the Lease is an "insured contract."

Such a determination does not, as FFIC argues, render the phrase "only to the extent of such obligation" superfluous. That phrase refers to the nature and extent of the requirements in the insured contract such as the type of coverage, the limits of coverage and/or any deductibles or retentions. For example, if Conmaco had only required Great Southern to procure $100,000 worth of commercial general liability coverage, as opposed to $1,000,000, then the FFIC Policy would arguably only afford Conmaco $100,000 of coverage. Moreover, such a reading is not in tension with the Lexington Policy, which defaults to be a primary policy but is rendered excess when "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations or the 'products-completed operations hazard' for which you have been added as an additional insured by attachment of an endorsement." The Lexington Policy becomes excess because the "insured contract" endorsement to the FFIC Policy covers Conmaco for the "operation" at issue in this case (the lease of the crane to Great Southern). Lastly, the FFIC and Lexington Policies' "other insurance" clauses are not "mutually repugnant" based on the failure of the Lexington Policy to define "operations" in its excess insurance clause. "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning." *Cadwallader*, 848 So. 2d at 580 (citing La. Civ. Code art. 2047). In this case, the only logical meaning of the word "operations" in the context of "operations . . . for which you have been added as an additional insured" is Great Southern's use of the crane, which is the source of the dispute.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.