SUSAN M. CHEHARDY, Chief Judge.
|2In this medical malpractice action, the plaintiff seeks reversal of the trial court’s grant of summary judgment in favor of the defendant physician, George Farber, M.D. We affirm.
FACTS AND PROCEDURAL HISTORY
In her petition, filed on September 22, 2010, Sherri L. Pignona complained that in September 2009, Dr. George Farber performed surgery on her that was to consist of two parts, but Dr. Farber quit the practice of medicine before performing the second part of the surgery, and without providing her with follow-up care for the first procedure.
The plaintiff alleged as follows: Dr. Far-ber’s specialty was dermatopathology, and the surgery was for surgical excision, biopsy and repair of fibrolipoma of the right lower abdomen. Dr. Farber performed the first part of the surgery on September 15, 2009, and the second part was to be performed as soon as the first part healed sufficiently. On September 22, 2009 (one week after the first procedure), she was informed that Dr. Farber had retired and could not provide her with further care. She subsequently discovered that “in September of 2009, Dr. Farber was the subject of disciplinary proceedings by the Louisiana | .¡Board of Medical Examiners and was at the cusp of having his license to practice medicine revoked.”
The plaintiff further alleged that Dr. Farber violated the standard of care expected of dermatologists and/or dermato-pathologists in the following particulars:
(a) In failing to disclose to petitioner that he (Dr. Farber) was the subject of disciplinary proceedings which had reached culmination and would result in a revocation of his license *393 to practice medicine handed down October 20, 2009;
(b) In failing to disclose the risk, dangers and perils associated with the anticipated medical procedure;
(c) In failing to provide petitioner with sufficient information to adequately meet the rigors of informed consent under Louisiana law;
(d) by failing to inform petitioner that he had lost his eligibility to be insured by the Louisiana Patients Compensation Fund for at least five years prior to petitioner’s submission of her medical care to Dr. Far-ber;
(e) In attempting to-perform a surgical procedure which should have been performed by a plastic or cosmetic surgeon;
(f) by neglecting and refusing to provide follow-up care; and
(g) By any and all acts or omissions which may be established at the trial of this case.
The plaintiff asserted that “Dr. Farber’s acts of deception, dishonesty and misrepresentations constituted violations of the Louisiana Unfair Trade Practices Act, entitling petitioner to multiplied damages, attorney’s fees and costs.”
She alleged, finally, that as a consequence of the acts and omissions set forth, she “remains scarred, her underlying needs for cosmetic surgery unresolved, and saddled with excessive debt due to the medical malpractice committed by Dr. Farber.”
l4On May 1, 2012, the defendant filed a motion for summary judgment, asserting that the plaintiff cannot carry her burden of proof in this medical malpractice action because there is no evidence that the defendant breached the applicable standard of care.[1] The defendant asserted further that there is no legal basis for the plaintiff’s claim under Louisiana’s Unfair Trade Practices Act. In support of the motion, the defendant pointed out that the plaintiff failed to present specific facts to support her claim against the defendant, and she had no expert to testify that the defendant had deviated from the standard of care in the malpractice claim.
In opposition, the plaintiff argued that the motion for summary judgment was premature and without merit, because Dr. Farber lied to the plaintiff by failing to tell her he was about to lose his medical license and by failing to tell her he was “going to leave the job half-done.” The plaintiff asserted that an expert was not necessary to establish these facts.
In rebuttal, the defendant argued that the plaintiff had failed to provide evidence to support her conclusory allegations, that expert testimony is required where there is no obvious negligence, that the plaintiff had not alleged an obviously careless act such as amputating the wrong limb, and that the plaintiff had consulted with a number of surgeons after the September 15, 2009 procedure, but none had told her that Dr. Farber deviated from the appropriate standard of care.
After argument, the trial court took the matter under submission and later rendered summary judgment in favor of the defendant. The judgment included reasons for judgment, which stated as follows:
This is a Medical Malpractice case and accordingly is subject to the provisions of the Medical | ¿Malpractice Act. In order to make a prima facie showing in a *394 Medical Malpractice action, the plaintiff must prove:
1. that the physician breached the applicable standard of care — an element that requires expert testimony; or
2. that the negligence is so obvious that a lay person can infer negligence without expert testimony on the standard of care and breach thereof.
In the instant case, the Petitioner has made the following allegations:
1. the first procedure Dr. Farber performed left the Petitioner with scars;
2. that Dr. Farber was removed from the practice of medicine prior to completing the second procedure on her opposite side.
If the Court follows these allegations logically:
1. Since the Petitioner was not satisfied with the result of the first procedure — that it left her with a scar — chances are that she would not have returned to Dr. Farber even if he was still practicing medicine.
To play off the analogy used by the Petitioner’s Counsel ... (that the Defendant’s actions were the equivalent to Dr. Farber as a barber handing the Plaintiff the scissors after cutting half her hair) the Court believes that the Plaintiff would have taken the scissors from him before he had a chance to cut the other side.
2. Further, the Court finds that the result of a scar from a surgical procedure does not equate to negligence “so obvious” that a lay person could
infer negligence without the aid of expert testimony.
At the hearing, counsel for the plaintiff had requested additional time within which to complete discovery and to obtain supporting expert testimony. The court noted that more than two years had passed from the filing of the suit to the hearing on the motion for summary judgment, and that the plaintiff had had “more than ample time” within which to identify an expert and to address the burdens placed Ison her by the summary judgment standard. The court stated it found the argument that discovery must be completed in order to identify an expert as “disingenuous.” Last, the court agreed with the defendant’s argument that the plaintiffs claim under the Louisiana Unfair Trade Practices Act is trumped by the Medical Malpractice Act.
The plaintiff filed a motion for new tidal, which was denied after a hearing. The court found no factual or legal basis to grant the motion, stating, “Contrary to movant’s reading of this Court’s August 7, 2012 judgment, the basis of that judgment was the plaintiffs failure to support her claim with expert medical testimony as required by La. C.C.P. art. 966(B). Further, this Court declines to grant Plaintiff another continuance in order to secure expert testimony.”
The plaintiff appealed.
ARGUMENTS
The plaintiffs brief fails to comply with the Uniform Rules of Louisiana Courts of Appeal, in that it does not specify the errors alleged on the appeal, or the issues presented for review. See Uniform Rules — Courts of Appeal, Rule 2-12.4.[2] It *395 merely sets out the proceedings in the district court. In addition, the brief refers to documents the plaintiff attached to her Motion for New Trial, regarding information from a physician. Her argument, made without reference to a specific assignment of error, is that summary judgment was inappropriate because “[i]t was error for the trial court to decide the case on what the district court thought [the plaintiff] would or would not do had she known that [the defendant] was being expelled from the profession.... ” She also argues, “Common sense dictates that 17Pr. Farber, whose rug was about to be pulled out from under him, should answer for his dishonesty and his failure to complete the procedure he started.”
The plaintiffs brief states in conclusion that the district erred as to both fact and law. She states, “There was no issue as to standard of care although those words were in our pleadings. It was a deception and abandonment case.” She seeks reversal of the judgment.
In opposition, the defendant points to the failure of the appellant to raise any issues for review in her brief. The defendant asserts that the plaintiffs mere statement that the district court “erred in both fact and law” has no legal merit. The defendant nevertheless addresses issues raised in the district court, stating the district court properly granted summary judgment because the plaintiff had no expert opinion to establish that a breach of the standard of care occurred: “The mere fact that she had a scar is not enough to establish negligence without the required guidance of expert testimony.... [Without such testimony, [the plaintiff] could not carry her burden of proof....”
Further, the defendant addresses the plaintiffs claim, in her motion for new trial, that the trial court’s ruling was premature because she had not yet completed discovery. The defendant contends the trial court correctly found that the plaintiff had had ample time to complete discovery, not only in the time span between filing of the suit and filing of the motion for summary judgment, but also because the hearing on the motion for summary judgment was postponed twice. The defendant points out that the amount of time to complete discovery is not unlimited.
Finally, the defendant argues there is no legal basis for the plaintiffs unfair trade practices claim, because the Medical Malpractice Act is a specific law applying to medical malpractice actions. As such, it trumps the Unfair Trade Practices Act, which is a general law. Hence, the defendant contends, the |Rsummary judgment was correct and the plaintiffs motion for new trial was properly denied.
LAW AND ANALYSIS
We note, initially, the appeal in this case was taken from the denial of the motion for new trial rather than from the judgment on the merits, yet the briefs argue the merits of the denial of the motion for summary judgment rather than the denial of the motion for new trial.
The denial of a motion for new trial is an interlocutory judgment which is not appealable. Rather, the denial of a motion for new trial is reviewable only under the appellate court’s supervisory jurisdiction for abuse of discretion.
However, our courts have held that appeals are favored in law, must be maintained whenever possible, and will not be dismissed for mere technicalities. Any doubt concerning the validity of an appeal should be resolved in favor of the *396 appellant to the end that an appeal can be sustained.
Thus, an appeal from the order denying a new trial, rather than from the judgment from which the new trial is sought, is improper. However, when the motion for appeal refers to a specific judgment denying a motion for new trial, yet the appellant exhibits a clear intention to appeal instead the judgment on the merits, then the appeal should be considered. This view conforms to the mandate of LSA-C.C.P. art. 865 to construe every pleading so “as to do substantial justice.” [Citations omitted.]
Lozier v. Estate of Elmer, 10-754, pp. 3-4 (La.App. 5 Cir. 2/15/11), 64 So.3d 237, 239, writ denied, 2011-0529 (La.4/25/11), 62 So.3d 93.
In reviewing the motion for appeal as well as the plaintiffs appellate brief, it is clear that the plaintiff intended to appeal the substance of the judgment on the merits. Accordingly, we construe the motion for appeal as an appeal on the merits of the grant of the summary judgment.
[ ^Appellate review of the granting of a motion for summary judgment is de novo, using the identical criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Smitko v. Gulf South Shrimp, Inc., 2011-2566, p. 7 (La.7/2/12), 94 So.3d 750, 755.
Specifically, appellate courts must ask the same questions as the district court: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Matthews v. Banner, 08-339, p. 3 (La.App. 5 Cir. 10/28/08), 996 So.2d 1161, 1163. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5 Cir.1988).
At the time of the hearing, La. C.C.P. art. 966 provided for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, showed that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.[3]
The initial burden of proof is with the mover to show that no genuine issue of material fact exists. La. C.C.P. art. 966(C)(2); Schultz v. Guoth, 2010-343, p. 6 (La.1/19/11), 57 So.3d 1002, 1006. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof [inat trial. Id. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. Id.
Medical Malpractice Claims
In support of the motion for summary judgment, the defendant attached a copy of the plaintiffs deposition. The plaintiff testified that after Dr. Farber performed the September 15, 2009 procedure on her, she consulted four other doctors about the scar remaining from the September 2009 procedure, as well as about other possible procedures. All of *397 these surgeons told her essentially the same thing, that is, that the scar could be repaired and she could then have a “tummy tuck.” The plaintiff admitted that none of these doctors ever told her that Dr. Farber deviated from the appropriate medical standard of care in her treatment. She simply claims she was told that she should have had a cosmetic surgeon perform the scar revision procedure.
At the hearing the trial judge asked plaintiffs counsel if the allegations against the defendant arise in medical malpractice. Plaintiffs counsel responded, ‘Tes, Your Honor. However, there’s no limitation of the time that you have to get an expert.”
The trial court disagreed, noting that the case had been ongoing for approximately three years. The court stated that the defendant was entitled to file a motion for summary judgment to find out the specific allegations of malpractice made by the plaintiff.
In response, plaintiffs counsel said, ‘Tour Honor, the allegations of malpractice are — in the aspect of whether or not he deviated from the standard of care, in connection with how he conducted the surgery, we do not have a doctor who says that was a deviation from the standard.” Plaintiffs counsel also reiterated that he did not believe he had “run out of time” to get an expert.
|nThe trial court reminded counsel that it is the plaintiffs burden to carry the action to the next stage. After plaintiffs counsel repeated his opinion that there is no time limitation, the court reminded counsel that the matter had been going on for three years. The court advised plaintiffs counsel that there was a problem with the plaintiff not moving the case forward in a timely manner. Plaintiffs counsel retorted, “I can find no law that says you’ve got a cutoff date.”
The record shows not only that the motion for summary judgment was argued nearly three years after the suit was filed, but also the summary judgment hearing was continued twice on the plaintiffs motion.
To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.
Samaha v. Rau, 2007-1726, pp. 5-6 (La.2/26/08), 977 So.2d 880, 883-884; Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228.
Here, the mere fact that the plaintiff had a scar after the September 15, 2009 surgery is not enough to establish negligence without the required guidance of expert testimony. Similarly, her complaint that the defendant stopped practicing medicine prior to performing the second planned procedure has not been shown to have caused her harm. Without expert testimony that there was a breach of the applicable standard of care, the plaintiff cannot carry her burden of proof.
Nor is there merit to the argument that the plaintiff should have been granted more time to obtain an expert opinion. There is no absolute right to delay a trial |12court’s consideration of a summary judgment motion until discovery is completed; rather, the trial judge has discretion to issue a summary judgment or to require further discovery. Orillion v. *398 Alton Ochsner Med. Found., 97-115, p. 6 (La.App. 5 Cir. 5/28/97), 695 So.2d 1063, 1065, writ denied, 97-1725 (La.10/13/97), 703 So.2d 617.
Yet, the law does require that parties be given a fair opportunity to present their claim. Id. It is within the trial court’s wide discretion to render a summary judgment, if appropriate, or to allow further discovery. Musa v. Litton-Avondale Indus., Inc., 10-627, p. 13 (La.App. 5 Cir. 3/29/11), 63 So.3d 243, 251, writ denied, 2011-1256 (La.9/23/11), 69 So.3d 1163. The trial court’s decision in this regard should only be reversed upon a showing of an abuse of that discretion. Id.
Accordingly, we find no abuse of the trial court’s discretion in refusing to allow the plaintiff additional time for discovery in this case.
Unfair Trade Practices Act Claim
Finally, with respect to the claim under the Louisiana Unfair Trade Practices Act (properly known as the Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq.), we agree with the trial court. “It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.” Burge v. State, 2010-2229, p. 5 (La.2/11/11), 54 So.3d 1110, 1113; State v. Campbell, 03-3035, p. 8 (La.7/6/04), 877 So.2d 112, 118. Hence, the trial court did not err in stating that the plaintiffs claims here are not subject to the Unfair Trade Practices Act. The burden of proof in this action is set out in La. R.S. 9:2794 which, as a statute specifically directed to medical malpractice, must prevail against the general provisions of La. R.S. 51:1405.
| ^DECREE
For the foregoing reasons, the judgment is affirmed.

AFFIRMED.

. At the hearing on the motion for summary judgment, defense counsel stated that the matter had not gone through a Medical Review Panel because the defendant was not a qualified health care provider under the Medical Malpractice Act.

. "The brief of the appellant ... shall set forth ... a specification or assignment of alleged errors relied upon, tire issues presented for review, an argument confined strictly to the issues of the case.... All specifications or assignments of error must be briefed. The *395 court may consider as abandoned any specification or assignment of error which has not been briefed.” Uniform Rules — Courts of Appeal, Rule 2-12.4.

. Acts 2012, No. 257, § 1 removed the words "on file” from Section B, subsection 2 of Article 966, effective August 15, 2012. The instant motion for summary judgment was heard on July 23, 2012. The parties did not introduce evidence at the hearing, but under Article 966 as it existed at the time, the court can consider all documents on file.