MARC E. JOHNSON, Judge.
lain this medical malpractice case, Plaintiff, John Ladart, appeals the granting of summary judgment in favor of Defendant, Harahan Living Center, Inc. d/b/a St. Joseph Nursing and Rehabilitation Center (“St. Joseph”), dismissing Plaintiffs claims with prejudice. For the reasons that follow, we affirm.

FACTS & PROCEDURAL HISTORY

Plaintiff filed this lawsuit on May 11, 2009, alleging that his mother, Anna Eloise Persich Ladart, was neglected and mistreated while in St. Joseph’s care from May 29, 2008 through August 6, 2008. He asserted that as a result of the neglect and mistreatment, his mother suffered serious and painful injuries that required medical attention.[1] Mr. Ladart indicated that his mother passed away on September 9, 2008 and, thus, he inherited her survival action. Mr. Ladart sought ^damages for past medical and related expenses, past mental anguish and physical pain, and loss of enjoyment of life.
Three years later, on June 29, 2012, St. Joseph filed a motion for summary judgment claiming that Plaintiff could not bear his burden of proof at trial because he had no expert to establish that the nursing care facility breached the required standard of care. In support of its motion, St. Joseph attached the affidavits of Mona Dortch, a registered nurse employed by St. Joseph as the director of clinical services, and Linda Ritchie, a registered nurse certified in wound, ostomy and continence care.
In her affidavit, Ms. Dortch stated that she had direct oversight of the nurses and staff at St. Joseph and had interacted with the nurses and staff providing care to Ms. Ladart. Additionally, she reviewed Ms. Ladart’s records relating to her admission to and stay at St. Joseph. Ms. Dortch outlined a time-line summarizing nurses’ notes and physician’s orders related to Ms. Ladart’s care. Ms. Dortch stated that Ms. Ladart developed two “stage-two” pressure ulcers during her stay at St. Joseph. She noted that Ms. Ladart was on a pressure-reducing mattress and was correctly positioned with the head of her bed elevated at all times. Ms. Dortch further stated that based on her personal recollection and review of Ms. Ladart’s medical chart, St. Joseph’s standard practice of weekly skin assessments was followed during Ms. La-dart’s treatment and care at St. Joseph. She opined that St. Joseph met all required standards of care in treating and caring for Ms. Ladart.
Ms. Ritchie stated in her affidavit that she was retained by St. Joseph to review the nursing care provided to Ms. Ladart while she was a patient at St. Joseph. Ms. Ritchie indicated that she had 27 years of experience as a practicing nurse in a clini *106 cal setting, which included monitoring, evaluating and treating patients with pressure ulcers. Ms. Ritchie explained that her certification as a |4wound, ostomy and continence nurse enabled her to express an opinion regarding nursing care provided to patients with pressure ulcer conditions. After reviewing Ms. Ladart’s medical records, Ms. Ritchie opined Ms. Ladart was at an increased risk for developing pressure ulcers. She further opined that St. Joseph complied with all standards of care when Ms. Ladart began to develop pressure ulcers, specifically noting the provision of an air mattress, increasing Ms. Ladart’s nutrients, and use of certain ointments for treatment of the wounds. Ms. Ritchie opined St. Joseph met the required standards of care in treating Ms. Ladart while she was a patient at the facility.
Plaintiff filed an opposition to St. Joseph’s motion for summary judgment claiming that he, as a licensed registered nurse, was qualified to testify as an expert regarding the applicable standard of care, the breach of that standard of care, and the causal connection between the breach of the standard of care and Ms. Ladart’s injuries. Plaintiff attached his own affidavit in which he stated that he has been a licensed registered nurse for over 20 years and has worked in various hospitals and nursing homes. He stated that he visited his mother at St. Joseph daily and was very familiar with the care and treatment she received. Plaintiff opined that St. Joseph breached the standard of care by failing to properly re-position or turn Ms. Ladart. He further stated he witnessed the falsification of St. Joseph’s re-positioning or turning records. Plaintiff opined St. Joseph’s treatment and care of Ms. Ladart fell below the applicable standard of care. He attached handwritten notes to his affidavit that he explained were made contemporaneously with the events surrounding his mother’s care.
The day after Plaintiff filed his opposition, St. Joseph filed a motion to strike Plaintiffs affidavit as untimely, having been filed only five days before the hearing Lon the motion, and irrelevant because Plaintiff was not competent to give expert testimony in the case.
At the hearing on the motion for summary judgment, the trial judge suggested the matter be postponed to give Plaintiff an opportunity to respond to St. Joseph’s motion to strike Plaintiffs affidavit. A second hearing was held two weeks later at which time the trial judge indicated that before he could rule on the merits of the motion for summary judgment, a Daubert[2] hearing was necessary to determine whether Plaintiff qualified as an expert.[3] Thereafter, St. Joseph filed a motion in limine to exclude the testimony of Plaintiff as an expert asserting Plaintiff was unqualified by education, knowledge, training or experience to give medical expert testimony regarding the standard of care appli *107 cable to St. Joseph as a health care provider.
A hearing on the motion in limine was held on February 5, 2013. During the hearing, St. Joseph offered the affidavits of Ms. Dortch and Ms. Ritchie, as well as excerpts from Mr. Ladart’s deposition into evidence. The trial court subsequently granted the motion in part, ruling that Plaintiff was not qualified as an expert in wound, ostomy and continence nursing care and would not be allowed to testify as to those areas of nursing; and denied the motion in part, ruling Plaintiff could otherwise testify as to anything admissible under the Louisiana Code of Evidence, including Article 701.
Thereafter, St. Joseph filed a motion re-urging its motion for summary judgment, on which the trial court had never ruled. A hearing on the motion for | summary judgment was held on June 24, 2013. At the conclusion of the hearing, the trial court granted summary judgment in favor of St. Joseph, finding that Plaintiff had failed to produce any expert testimony establishing the standard of care and any causal connection between any breach of the standard of care and Ms. Ladart’s injuries. Plaintiff appeals this ruling.

ISSUES

Plaintiff raises several issues on appeal. He first challenges the trial court’s rulings relating to the need for an expert witness in this case to establish the negligence of the nursing home, its refusal to accept Plaintiff as an expert, and its limiting Plaintiff to those experts identified prior to the first motion for summary judgment hearing. Plaintiff next argues that summary judgment was improper because genuine issues of material fact existed, and that the trial court erroneously made credibility determinations in granting summary judgment.

DISCUSSION

Standard of Review

Appellate courts review the granting or denial of a motion for summary judgment de novo using the same standards applicable to the trial court’s consideration of whether summary judgment is appropriate. Suarez v. Mando, 10-853 (La.App. 5 Cir. 3/29/10); 62 So.3d 131, 133, writ denied, 11-885 (La.6/17/11); 63 So.3d 1036. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
A material fact is one that potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. Hines v. Garrett, 04-806 (La.6/25/04); 876 So.2d 764, 765 (per curiam). A genuine issue [ 7is a “triable issue.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94); 639 So.2d 730, 751. If reasonable persons could disagree after considering the evidence, a genuine issue exists. However, if reasonable persons could reach only one conclusion on the state of the evidence, there is no need for a trial on that issue and summary judgment is appropriate. Id.; Suarez, supra. “In determining whether an issue is ‘genuine,’ courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Smith, 639 So.2d at 751.
The initial burden of proof is with the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for *108 one or more elements essential to the adverse party’s claim, action, or defense. The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(C)(2); Schultz v. Guoth, 10-343 (La.1/19/11); 57 So.3d 1002,1006.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of most civil actions and is favored in the law. La. C.C.P. art. 966(A)(2).

Need for Expert Testimony

Plaintiff first argues that the trial court erred in determining expert testimony was required in this case to establish the negligence of the nursing home that allegedly caused Ms. Ladart’s decubitus ulcers.
A decubitus ulcer that forms as a result of improper care in a health care setting is actionable as malpractice. Miller ex rel. Miller v. Nursing Homes Management, Inc., 38,198 (La.App. 2 Cir. 3/5/04); 867 So.2d 1000, 1004. A plaintiff in a medical malpractice action is required to establish (1) the standard of care applicable to the health care provider; (2) a violation by the health care provider of that standard of care; and (3) a causal connection between the health care provider’s alleged negligence and the patient’s injury. La. R.S. 9:2794(A); Pfiffner v. Correa, 94-924 (La.10/17/94); 643 So.2d 1228,1233.
Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a layperson can infer negligence without the guidance of expert testimony. Examples of obvious negligence that could be inferred without expert testimony include fracturing a leg during examination, amputating the wrong limb, dropping a knife or scalpel on a patient, or leaving a sponge in a patient’s body. Schultz, 57 So.3d at 1007, citing Pfijfner, 643 So.2d at 1233-34. The requirement of producing expert medical testimony is especially appropriate when the defendant has filed a motion for summary judgment and supported his motion with expert opinion evidence that the treatment met the applicable standard of care. Vanner v. Lakewood Quarters Retirement Community, 12-1828 (La.App. 1 Cir. 6/7/13); 120 So.3d 752, 756.
We find that Plaintiff was required to present expert testimony in this case to establish the standard of care and breach of that standard of care. This is not a case where the alleged negligence is so obvious that a layperson could infer negligence without expert guidance. Plaintiff claims Ms. Ladart’s injuries were caused by the failure of the nursing staff to provide certain equipment and to regularly re-position or turn her. The connection between these failures and the development of decubitus or pressure ulcers in light of Ms. Ladart’s medical history and condition is beyond the province of a layperson to assess. See Vanner, supra, and Guardia v. Lakeview Regional Medical Center, 08-1369 (La.App. 1 Cir. 5/8/09); 13 So.3d 625, 630. Thus, the trial court did not err in requiring Plaintiff to present expert testimony to overcome St. Joseph’s motion for summary judgment.

Plaintiff as an Expert

Plaintiff next argues that the trial court erred in finding he was not qualified to give expert testimony. He contends that he is a licensed registered nurse and has the education and training to qualify as an expert in this matter. He points out *109 that he has worked in several area hospitals and nursing homes, and provided long-term care for his mother for years.
The admissibility of expert testimony is governed by La. C.E. art. 702, which states:
[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In order to be admissible under La. C.E. art. 702, expert testimony must not only be relevant but also reliable. State v. Foret, 628 So.2d 1116,1123 (La.1993), citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court is required to exercise a gate keeping function to insure an expert’s testimony is reliable. Foret, supra. The trial court has broad discretion in determining who should or should not be permitted to testify as an expert, and a trial court’s decision regarding the qualification of an expert will not be overturned absent an abuse of that discretion. Johnson v. Morehouse General Hospital, 10-387 (La.5/10/11); 63 So.3d 87, 99.
In a medical malpractice case, an expert must satisfy the trial judge that he or she is qualified to give testimony regarding the applicable standard of care. | mWells v. Louisiana Dept. of Public Safety and Corrections, 46,428 (La.App. 2 Cir. 8/24/11); 72 So.3d 910, 917, writ denied, 11-2637 (La.2/10/12); 80 So.3d 474.
Plaintiff did not testify at the motion in limine hearing, but instead relied on his affidavit. In his affidavit, Plaintiff stated that he has been a licensed registered nurse since 1991, and has worked as such in five hospitals and three nursing homes in the greater New Orleans area. He indicated that he visited his mother daily at St. Joseph and was familiar with the care and treatment she received while she was a patient in the facility. Plaintiff stated that based on his personal knowledge as a witness to the care and treatment his mother received at St. Joseph, it was his expert opinion that St. Joseph breached the standard of care by failing to properly re-position or turn Ms. Ladart thereby failing to prevent decubitus ulcers.
St. Joseph offered excerpts from Plaintiffs deposition taken one year earlier. In those excerpts, Plaintiff stated that although his license was current, he had not worked as a nurse since 2004, but rather had been caring for his mother on a full-time basis. He explained that his work in various hospitals included assignment to the medicine floor, the orthopedic floor, “med-surge nursing,” and psychiatric nursing. He also explained that his work in the nursing homes was part-time. When asked if he had any specific training in treating pressure ulcers or decubitus wounds, Plaintiff responded, “I want to tend to say yes, that there was training at least to witnessing to see what was being done, how it was being done. I’d have to definitely say in nursing school we must have. Of course that goes back so many years ago. I don’t recall.” Plaintiff admitted that he had never been given the title “wound care nurse” in any of the jobs he held as a nurse and had no certifications in wound ostomy care.
The trial court ultimately ruled that Plaintiff was not qualified as an expert in wound, ostomy and continence nursing care and, thus, could not testify as to those Inareas of nursing. The trial court specifically ruled that Plaintiff could give his opinion as a lay witness under La. C.E. art. 701.
*110 The trial court may properly exclude the testimony of any witness as an expert where that person is unable to demonstrate sufficient training or experience in the field for which he has sought to qualify as an expert. Hunnicutt v. Kent, 434 So.2d 91, 94 (La.App. 5th Cir.1982), writ denied, 435 So.2d 442- (La.1983). Plaintiff failed to show that he had superi- or knowledge, experience or skill relating to the prevention of pressure ulcers or the monitoring, evaluating and treating of patients with pressure ulcers. He had no special training in wound care and did not work as a wound care nurse. The mere fact a person is a licensed registered nurse does not in and of itself render that person an expert in the prevention and treatment of pressure ulcers. Based on our review of the record, we cannot say the trial court abused its discretion in excluding Plaintiff as an expert witness in this case.

Propriety of Summary Judgment

As noted above, in order to prevail in this medical malpractice case, Plaintiff must prove the standard of care applicable to St. Joseph, a breach of that standard of care, and a causal link between the breach and the injury. Pfiffner, supra. For the reasons previously discussed, we find Plaintiff was required to produce medical expert testimony to establish a breach of the applicable standard of care and whether that breach caused Ms. Ladart’s injuries. Vanner, supra; Guardia, supra.
In its motion for summary judgment, St. Joseph argued that Plaintiff did not have an expert to establish the standard of care and that he had never identified an expert in his discovery responses. Although Plaintiff opposed the motion by submitting his own affidavit as expert testimony, Plaintiff was not qualified, for reasons discussed above, to give expert testimony in this case regarding the 112applicable standard of care relating to the prevention and treatment of pressure ulcers. Without expert testimony, Plaintiff failed to show he would be able to carry his burden of proof at trial. Thus, we find there are no genuine issues of material fact and St. Joseph is entitled to summary judgment as a matter of law.
On appeal, Plaintiff argues the trial court should have allowed him time to name another expert once it ruled Plaintiff was not qualified to give expert testimony. During the motion in limine hearing, Plaintiff indicated that he had consulted an expert. He asked the trial court for additional time to bring in the expert, with whom he had consulted, in the event the trial court ruled Plaintiff was not an expert. The trial court refused Plaintiffs request, explaining that Plaintiff had three years to identify an expert and provide an expert report.
Under La. C.C.P. art. 966, a motion for summary judgment is appropriate after “adequate discovery.” The law requires the parties be given a fair opportunity to present their claims. Pignona v. Farber, 13-192 (La.App. 5 Cir. 10/9/13); 128 So.3d 390, 397-98. There is no absolute right to delay a trial court’s consideration of a motion for summary judgment until discovery is completed; rather, it is within the trial court’s discretion to render summary judgment or require further discovery. Id. The trial court’s decision in this regard should only be reversed upon a showing of an abuse of that discretion. Id.
The motion for summary judgment was filed three years after Plaintiff filed suit. Although Plaintiff indicated he had consulted an expert, he failed to identify any such expert in any of his discovery responses. Additionally, Plaintiff failed to name the expert during the hearing at the time of his request. Further, Plaintiffs main argument at the hearing on the mo *111 tion for summary judgment was that expert testimony was not required. Based on these circumstances, we do not find the trial 113court abused its discretion in refusing to allow Plaintiff additional time to obtain expert testimony.

DECREE

Upon de novo review of St. Joseph’s motion for summary judgment, the accompanying exhibits, and the applicable law, we find there are no genuine issues of material fact and that St. Joseph is entitled to summary judgment as a matter of law. Accordingly, we affirm the trial court’s granting of summary judgment in favor of St. Joseph, dismissing Mr. La-dart’s claims with prejudice.

AFFIRMED.

. The record shows that Ms. Ladart developed pressure ulcers, or bed sores, during her stay at St. Joseph.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. We note that the trial court incorrectly stated a “Daubert hearing” was necessary to determine Plaintiffs qualifications as an expert. The purpose of a Daubert hearing is to determine the reliability of the methodology used by an expert; its purpose is not to determine an expert's qualifications to give an opinion. The Daubert test is only one part of a three-part inquiry in determining whether an expert's testimony is admissible. Cheairs v. State ex rel. Department of Transp. and Development, 03-680 (La. 12/3/03); 861 So.2d 536, 542. Although the trial court incorrectly labeled the necessary hearing, it properly recognized it needed to first determine that "the expert is qualified to testify competently regarding the matters he intends to address" before Plaintiff’s affidavit could be admissible as expert testimony. Id.