CASEY SLAYDON

VERSUS

RIVER OAKS, INC. D/B/A RIVER OAKS
HOSPITAL

NO. 23-CA-452

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 822-060, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

April 24, 2024

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Scott U. Schlegel

**AFFIRMED**
    **SUS**
    **FHW**

**WINDHORST, J., DISSENTS WITH REASONS**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CASEY SLAYDON
Pierre F. Gremillion
Vincent J. DeSalvo

COUNSEL FOR DEFENDANT/APPELLEE,
RIVER OAKS, INC. D/B/A RIVER OAKS HOSPITAL
Zachary R. Christiansen

**SCHLEGEL, J.**

Plaintiff/Appellant, Casey Slaydon, appeals the trial court's June 20, 2023 judgment, which granted a motion for summary judgment filed by defendant, River Oaks, Inc. d/b/a River Oaks Hospital ("River Oaks"), and dismissed all of Mr. Slaydon's claims against River Oaks with prejudice. Mr. Slaydon contends that River Oaks' nursing staff failed to provide prompt treatment for an infection in his left leg/knee, resulting in the amputation of his left leg above his knee. The trial court found that Mr. Slaydon failed to meet his burden to prove that a genuine issue of material fact existed on the issue of causation because he did not present any expert testimony on this issue. Due to Mr. Slaydon's complex medical history and condition, expert testimony is necessary to establish causation in this matter. Therefore, we affirm the judgment under review.

## FACTS AND PROCEDURAL BACKGROUND

Mr. Slaydon filed a petition for damages against River Oaks on October 21, 2021. In his petition, Mr. Slaydon explains that he admitted himself into River Oaks for "detox services" on October 1, 2020. Prior to his stay at River Oaks, he had undergone a recent surgery to insert a rod in his left leg. He alleged that River Oaks failed to timely diagnose and treat an infection in his left knee/leg during his detox treatment even though he had experienced prior infections following the surgery. He further alleged that River Oaks' negligence caused him to sustain injuries and damages, including the above the knee amputation of his left leg. River Oaks filed an answer to the petition on November 12, 2021.

Over six months later, on May 16, 2022, River Oaks filed a motion for summary judgment asserting that Mr. Slaydon could not prevail at trial because he failed to identify an expert to testify to the elements necessary to meet his burden of proof in a medical malpractice action – the standard of care, breach of the standard of care, and causation. River Oaks explained that it sent Mr. Slaydon

interrogatories asking him to identify any individual who would testify as an expert witness in this matter. Mr. Slaydon responded that he had "[n]one at this time, other than medical providers listed herein." Mr. Slaydon did not identify any individual medical providers who treated his leg in his discovery responses.

River Oaks' summary judgment motion was originally set for hearing on July 7, 2022. The parties agreed to continue the hearing to allow Mr. Slaydon time to depose Dr. Mack Holdiness, a physician who treated Mr. Slaydon at River Oaks. The hearing date was eventually reset to March 16, 2023.

On March 1, 2023, Mr. Slaydon filed a one-page opposition to the summary judgment motion. In his opposition, Mr. Slaydon agreed that he would "need to call a medical expert to opine as to applicable standards of medical care and to the Defendant's breach thereof with causation of damages," to meet his burden of proof at trial. Mr. Slaydon attached his own affidavit, as well as an affidavit from a nursing expert – a licensed registered nurse – Kimberly Stonecypher, and argued that the affidavits provided "genuine issues of material fact."

River Oaks filed a reply memorandum arguing that Mr. Slaydon failed to offer any expert evidence regarding the causation element. River Oaks asserted that while the Ms. Stonecypher's affidavit contained numerous statements with respect to alleged deviations from the nursing standard of care, she failed to offer any opinions or conclusions that the damages suffered by Mr. Slaydon were causally related to the alleged deviations. River Oaks further argued that as a nursing expert, Ms. Stonecypher was not qualified to testify regarding medical causation because this was outside of the realm of nursing care.

The matter came for hearing on March 16, 2023. Following oral argument, the trial court granted summary judgment, finding that Mr. Slaydon did not produce expert testimony to meet his burden of proof with respect to the causation element. On June 20, 2023, the trial court signed a written judgement, which

granted River Oaks' summary judgment motion and dismissed Mr. Slaydon's claims with prejudice. The judgment stated that Mr. Slaydon "did not create genuine issues of material fact as to causation." On August 7, 2023, Mr. Slaydon filed a motion for devolutive appeal, which the trial court granted the same day.

## LAW AND ANALYSIS

On appeal, Mr. Slaydon argues that the trial court erred by finding that no genuine issues of material fact existed regarding the cause of his damages. Mr. Slaydon specifically argues that he did not need to provide expert testimony on the issue of causation based on the "common knowledge" exception. He argues that the breach of the nursing standards of care by River Oaks' nursing staff caused a delay in the assessment and treatment of his left knee/leg and that it is common knowledge that the delayed treatment caused him additional harm.

River Oaks argues in response that expert testimony is required because wound healing is a complex medical issue and Mr. Slaydon has a complex medical history. River Oaks contends that the trial court properly granted summary judgment due to the absence of any expert testimony to link any alleged deviations in the nursing standard of care to an alleged change in Mr. Slaydon's outcome.

The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial on the issue before the trial court on the motion for summary judgment, the mover is not required to negate all essential elements of the plaintiff's claim, but is only required to point out the absence of factual support for one or more elements

essential to the plaintiff's claim. *Id.* The burden then shifts to the plaintiff to produce factual support sufficient to show the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reed v. Landry*, 21-589 (La. App. 5 Cir. 6/3/22), 343 So.3d 874, 880.

To establish a claim for medical malpractice, a plaintiff must prove by a preponderance of evidence: 1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. With respect to causation, a plaintiff must prove that "as a proximate result of [the] lack of knowledge or skill or the failure to exercise [the] degree of care the plaintiff suffered injuries that would not otherwise have been incurred." La. R.S. 9:2794(A)(3). Nurses who perform medical services are subject to the same standards of care and liability as physicians. *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654, 661 (La. 1989).

Generally, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under La. R.S. 9:2794's requirements without expert testimony. *Pfiffner v. Correa*, 94-924, 94-963, 94-992 (La. 10/17/94), 643 So.2d 1228, 1234. Further, except for cases where the causal connection between a defendant's fault and the injury alleged is obvious, such as "where a seriously injured patient is left to bleed to death in an emergency room," expert medical testimony is also necessary to establish causation. *Id.; Henry v. Weishaupt*, 17-26 (La. App. 5 Cir. 5/31/17), 221 So.3d 299, 304, *writ denied*, 17-1066 (La. 10/9/17), 228 So.3d 746.

Normally, in cases involving patients with ***complicated medical histories or complex medical conditions***, causation is simply beyond the domain of lay persons

to assess without the assistance of expert medical testimony.  *See Pfiffner*, 643 So.2d at 1234 (causal connection between patient's death and an unreasonable delay in neurosurgeon's diagnosis and treatment of patient in circumstances involving complex medical history and condition required expert testimony); *Henry*, 221 So.3d at 304; *Ladart v. Harahan Living Center, Inc.*, 13-923 (La. App. 5 Cir. 5/14/14), 142 So.3d 103, 108, *writ denied*, 14-1147 (La. 9/19/14), 149 So.3d 243 (finding that in light of plaintiff's medical history and condition, expert testimony was required to establish a connection between the nursing staff's failure to regularly reposition plaintiff and the development of pressure ulcers).

Further, in *Moss v. Stokes*, 21-40 (La. App. 5 Cir. 10/20/21), 329 So.3d 1100, 1103, *writ denied*, 21-1740 (La. 1/26/22), 332 So.3d 83, this Court determined that a surgical cite infection presented a complex medical condition that required expert testimony to satisfy the burden of proof.  In *Moss*, the plaintiff injured his wrist while playing football.  Following surgery, the plaintiff developed a bacterial infection that progressed to a severe state necessitating further surgical interventions and causing severe, permanent and disabling injuries including permanent damage to the bones in the wrist.  The plaintiff filed a petition for damages against his doctor, the medical clinic, and surgical center alleging, among other things, that the doctor failed to timely diagnose and treat the infection.  The plaintiff alleged that he repeatedly advised the doctor during post-operation visits that he believed he had an infection, but claimed his doctor ignored his concerns and failed to perform necessary testing to diagnose the infection.

The defendants filed a summary judgment motion arguing that the plaintiff failed to produce proper expert testimony to meet his burden of proof to establish a medical malpractice claim.  The trial court granted summary judgment and dismissed the plaintiff's claims.  On appeal, this Court affirmed based on its finding that "the prevention, diagnosis, and treatment of surgical site infections

present complex medical and factual issues which require the testimony of an expert witness to meet the evidentiary burden set forth in La. R.S. 9:2794(A)." *Id.* at 1103.

In the present matter, Mr. Slaydon argues that based on the "common-knowledge" exception, expert testimony is not required to establish causation in this matter. However, following our *de novo* review of the affidavits Mr. Slaydon attached to his opposition brief, we find that due to Mr. Slaydon's complex medical history and the complex medical condition presented by his surgical wound, Mr. Slaydon cannot meet his burden on the issue of causation without expert testimony.

In her affidavit, Ms. Stonecypher began by summarizing Mr. Slaydon's complex medical history and numerous conditions contained in the River Oaks' medical records.[1] She noted that on October 1, 2020, Mr. Slaydon admitted himself into River Oaks for treatment for a heroin addiction he described as ongoing for three to four years. He also disclosed that he had been using "meth and THC." The intake assessment noted that Mr. Slaydon had scars all over his arms and that he "was picking his sores during his assessment." In addition to his drug addiction, Ms. Stonecypher explained that the assessment and nursing notes listed other medical issues and conditions, including 1) multiple healing wounds on his lower left leg; 2) asthma; 3) Hepatitis C positive; and 4) a closed head injury. She also referenced that the assessment included a "written note that the client is to have a BKA soon."[2] Mr. Slaydon also explains in his affidavit that he informed the nurses that he had recently undergone a surgery to place a rod in his left leg and

---

[1] Ms. Stonecypher did not attach any of the River Oaks' medical records that she cited to in her affidavit.

[2] Ms. Stonecypher did not explain what the initials "BKA" meant in her affidavit. According to the *Attorneys Medical Deskbook 4th,* §5:4, Dan J. Tennenhouse, MD, JD, FLCM*,* "BKA" means below the knee amputation. Appellate courts may take judicial notice of medical terms and definitions. *See* La. C.E. art. 201*; see also Veras v. Jacobson*, No. 18-CV-6724 (S.D.N.Y. June 14, 2022), 2022 WL 2133842, p. 2, fn.4.

had "a history of infections in this leg which required immediate medical attention."

Ms. Stonecypher contends that the River Oaks' nursing staff breached the standard of care by failing to properly assess and document the wound when Mr. Slaydon was initially admitted to River Oaks, by failing to document a plan of care for the wound, and by failing to update his treatment plan when he was experiencing drainage and pain on October 4, 2020. She further states that Mr. Slaydon indicated that he reported swelling and pain in his leg as early as October 2, 2020, and that the nursing staff breached the standard of care by failing to advocate for the patient and escalating the issue to a nursing supervisor or physician.[3] However, Ms. Stonecypher's affidavit does not include any findings that these alleged deviations in the standard of care caused the amputation.

Mr. Slaydon argues for the first time on appeal that the trial court should have concluded that the alleged delay in treatment caused some unspecified "additional harm." If Mr. Slaydon is attempting to transform his claim into one for the alleged loss of the chance to save his leg, such a claim would certainly require expert testimony from a physician this case. His argument that it is "common sense" that any delay caused "additional harm" is contrary to the Louisiana Supreme Court's instruction in *Pfiffner*, 643 So.2d at 1234, that expert testimony is required when a patient has a complex medical history or complex medical condition. The connection between the alleged deviations and the subsequent amputation in light of Mr. Slaydon's complex medical history and condition is beyond the province of a layperson to assess. Mr. Slaydon's own expert noted Mr. Slaydon's extremely complicated medical history that included years of drug

---

[3] Mr. Slaydon states in his affidavit that on October 2, 2020, he advised the nurses that he was experiencing swelling, redness, and severe pain in his left leg/knee. He claimed that the "first medical attention [he] received was on October 5, 2020," and that on October, 6, 2020, the wound burst open.

addiction. Mr. Slaydon further explained that he had a recent surgery on his left leg that involved a history of prior infections. Thus, we find Mr. Slaydon cannot prove an essential element of his claim without providing expert evidence as to causation. After River Oaks pointed out an absence of factual support for the causation element of malpractice, Mr. Slaydon was required to produce expert testimony regarding causation in order to defeat summary judgment. He has failed to do so.[4]

**CONCLUSION**

For the forgoing reasons, we find that trial court properly granted summary judgment and dismissed Mr. Slaydon's suit against River Oaks with prejudice. Accordingly, the judgment of the district court is affirmed.

**AFFIRMED**

---

[4] We further observe that in his petition for damages, Mr. Slaydon alleged that the negligence of River Oaks' "employees" caused his injuries. Ms. Stonecypher refers primarily to breaches of the nursing standard of care in her affidavit, though she does refer to the hospital standard of care several times. Regardless, this Court has previously recognized that pursuant to La. R.S. 9:2794(D), registered nurses are not qualified to provide expert testimony regarding the applicable standard of care provided by physicians. *Moss*, 329 So.3d at 1105. Therefore, to the extent that Mr. Slaydon intended to allege that any physicians employed by River Oaks caused his injuries, the trial court properly dismissed such claims due to the lack of proper expert testimony.

CASEY SLAYDON

VERSUS

RIVER OAKS, INC. D/B/A RIVER OAKS
HOSPITAL

NO. 23-CA-452

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**WINDHORST, J., DISSENTS WITH REASONS**

I respectfully dissent from the majority opinion. I believe Nurse Stonecypher's affidavit is sufficient to create a genuine issue of material fact on causation. I also think the "common knowledge" exception should apply here.

Nurse Stonecypher's affidavit outlines in detail several breaches in the standard of care and violations of hospital policy and procedure. First, the affidavit states that a body check is required upon admission and that nursing personnel are responsible for the initial assessment for all wounds. Nurse Stonecypher found that Mr. Slaydon's wounds were not assessed and findings were not documented upon admission or during each shift at River Oaks.[1] Nurse Stonecypher opined that this failure to follow policy and procedure is a breach in the nursing and hospital standards of care.

Second, Nurse Stonecypher stated that River Oak's policy required the nursing staff to initiate precautions for existing medical conditions during a patient's hospitalization. She found that Mr. Slaydon's master care plan did not include a plan of care to address his left knee wound, which also constitutes a breach in the nursing and hospital standard of care.

_____

[1] Mr. Slaydon states in his affidavit that on October 2, 2020, he advised the nurses that he was experiencing swelling, redness, and severe pain in his left leg/knee. He further states that he did not receive medical attention until October 5, 2020, and that on October 6, 2020, the wound burst open.

Third, Nurse Stonecypher recognized in her affidavit that on October 4, 2020, the nursing staff noted a small seeping hole in Mr. Slaydon's left leg/knee area and his complaints of pain. She opined that a more aggressive and advocating approach should have been taken and that his condition should have been reported to a nursing supervisor or manager. She stated that the nursing staff's failure to advocate for a patient so that they receive medication attention timely is a breach of nursing and hospital standards of care.

Nurse Stonecypher's affidavit states:

> It is my opinion that the aforementioned breaches in the nursing standard of care reached a level of gross negligence due to the fact that no actions were taken by the nursing staff to appropriately or accurately provide an assessment of the wounds to Mr. Slaydon's leg during upon his admission to River Oaks Hospital. It is also gross negligence to not provide the care and treatment for a patient that is guided by a hospital's policy and procedure that is specific in the determination of information required and the process to follow after the information is obtained. *** To not respond to a patient's complaint's and to not monitor a patient through interventions such as a physical assessment of the left leg and then to report to the key individuals such as the physician and nursing leadership is gross negligence.

Although her affidavit may not include the specific terms related to causation, I believe a reading of the affidavit in its entirety clearly creates a genuine issue of material fact as to whether River Oaks potential gross negligence caused Mr. Slaydon some harm. Nurse Stonecypher repeatedly states that the nursing standard of care reached a level of *gross negligence*. In addition, considering Mr. Slaydon's poor condition at the time of admission, the nursing staff clearly should have been alerted that he would likely need additional medical attention and/or close attention.

Taking in consideration the above, as well as the "common knowledge" exception, I do not think Mr. Slaydon should be deprived of his right to present his case to a jury. In medical malpractice claims, Louisiana jurisprudence has

recognized that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof. Pfiffner v. Correa, 94-924 (La. 10/17/94), 643 So.2d 1228, 1233. Expert testimony is not required where the physician does an obviously careless act, from which a layperson can infer negligence. Id.; See also, Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 719 (La. 1986). The Pfiffner court held that obvious negligence may be inferred by a layperson from the failure to attend to a patient when the circumstances demonstrate the serious consequences of this failure, and the failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary. Pfiffner, 643 So.2d at 1234. The "common-knowledge" exception does not give the members of the medical profession a monopoly on common sense. Breaux v. Ochsner Clinic, LLC, 23-62 (La. App. 4 Cir. 9/29/23), writ denied, 23-01436 (La. 1/10/24), 376 So.3d 847. The facts of this case fall within the common knowledge exception or the definition of obvious negligence, which may be inferred by a layperson.

Causation is a question of fact generally decided at the trial on the merits. Estate of Adams v. Home Healthcare of Louisiana, 00-2494 (La. 12/15/00), 775 So.2d 1064; Breaux, *supra*. Once a breach of duty constituting malpractice is established, the question of whether the malpractice contributed to the damage is a question of fact for the jury. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 720 (La. 1986). Defendant's conduct must increase the risk of a patient's harm to the extent of being a substantial factor in causing the result but need not be the only cause. Id.

In Estate of Adams, plaintiff alleged that defendant, Home Health Care of Louisiana ("HH"), was negligent in failing to properly care for her at home after an extensive hospitalization and in failing to call the attending doctor when the plaintiff's condition worsened. In its summary judgment motion,

HH did not contest its negligence, but argued that the amputation of the plaintiff's foot would have been required regardless of its negligence. HH relied on plaintiff's lack of an expert witness to prove the causal connection between its negligence and the amputation. The trial court granted HH's summary judgment motion; the appellate court, with one dissent, affirmed. Granting writs and reversing the lower courts, the Supreme Court observed:

> the admitted negligence clearly caused some damages, even if it merely hastened the amputation by one day. Plaintiff's damages for pain and suffering during the period of negligence, for aggravation of her medical condition, and for loss of any chance of saving her foot or of delaying the amputation is more appropriately decided by trial on the merits, even if plaintiff's case regarding the amount of damages is considerably weakened by the dearth of expert testimony.

Estate of Adams, 00-2494, 775 So.2d at 1064-65.

In Breaux, plaintiff averred that during a thirteen-day period of misdiagnosis, he suffered "continued and progressive pain"; the misdiagnosis "caused him to continue with a physically demanding and strenuous practice regimen, causing severe pain, grievous injuries and damages"; and the misdiagnosis "caused a delay in petitioner receiving the appropriate treatment and care." Plaintiff also Mr. Breaux asserted the loss of a chance of a more favorable outcome doctrine.

The trial court granted defendant physicians' summary judgment, agreeing with their argument, that the lack of expert testimony to establish a causal connection between the assumed misdiagnosis and any injury to Mr. Breaux was dispositive. Plaintiff countered that the causal connection between the misdiagnosis and his increased leg pain falls within the "common-knowledge" exception to the expert testimony rule.

On appeal, the appellate court concluded that a lay person could attribute Mr. Breaux's alleged injury to the wrongful conduct without the aid of expert testimony.

As a result, the appellate court reversed the trial court's granting of summary judgment.

Considering the foregoing, particularly Nurse Stonecypher's affidavit, the obvious delayed treatment in this case, and Mr. Slaydon's apparent medical problems upon admission, I believe the record supports allowing Mr. Slaydon to present his claim to a jury. See Estate of Adams, *supra*; Breaux, *supra*. In my view, a jury should determine whether River Oaks' delay in providing Mr. Slayton treatment for his wound caused him any additional damages. As recognized in Pfiffner, the issue of whether the delayed treatment caused Mr. Slaydon additional damages is a determination capable of a layperson's reasonable inference. In addition, when considering summary judgment motions, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion. Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La. 2/29/00), 755 So.2d 226, 236. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the court should deny the motion and let the issue be decided at trial. Id.

Accordingly, I would reverse the trial court's judgment granting River Oaks' motion for summary judgment and deny the motion.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 24, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-452**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
PIERRE F. GREMILLION (APPELLANT)     VINCENT J. DESALVO (APPELLANT)     ZACHARY R. CHRISTIANSEN (APPELLEE)

### MAILED
NO ATTORNEYS WERE MAILED